## SHARON BENDER *v.* MARK BENDER
### (SC 16434)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued May 22—officially released December 18, 2001

*Barry T. Pontolillo*, for the appellant (defendant).

*Joseph R. Galotti, Jr.*, for the appellee (plaintiff).

*Arnold H. Rutkin* of the American Academy of Matrimonial Lawyers and *Sarah S. Oldham* of the Connecticut Bar Association Family Law Section filed a joint brief as amicus curiae.

*Opinion*

BORDEN, J. The principal issue in this certified appeal is whether, in a dissolution action, unvested pension benefits are property subject to equitable distribution pursuant to General Statutes § 46b-81.[1] Following our grant of certification to appeal, the defendant

[1] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

appeals from the judgment of the Appellate Court affirming the judgment of the trial court. The trial court had ordered, among other things, that the plaintiff, Sharon Bender, would be entitled, in the event that the pension of the defendant, Mark Bender, ultimately vested, to one half of the pension benefits earned by him through the date of the dissolution decree. The defendant claims that the trial court's award of his unvested pension benefits was impermissibly speculative. We conclude that the trial court did not abuse its discretion in formulating its financial award with respect to the defendant's pension benefits. Accordingly, we affirm the judgment of the Appellate Court.

The trial court found the following facts. The plaintiff and the defendant, who were married in 1976, have four children, two of whom were minors at the time of trial. In July, 1997, the plaintiff brought this dissolution action, claiming custody of the minor children, child support, alimony and a property distribution.

The principal cause for the breakdown of the marriage was the fact that nearly all of the defendant's free time was spent in pursuits that did not include the plaintiff or their children, including his hobbies of motorcycling, boating and fishing. The defendant also had at least one adulterous relationship during the marriage. The court further found that there had been some violence on the part of the defendant. Despite the defendant's fairly good income, additional income from the plaintiff's part-time employment and from the defendant's lawn services and snow plowing, and minimal housing expenses, the parties had acquired virtually no assets and no savings. Furthermore, nearly all of the parties' discretionary income had been expended on the defendant's personal pursuits.

The following facts relate to the defendant's retirement benefits. At the time of trial, the defendant had

been employed as a firefighter by the city of Meriden for approximately nineteen years. The defendant is entitled to a pension as a firefighter in the event that he reaches twenty-five years of service. His pension, therefore, is unvested,[2] except for purposes of disability. If the defendant were to leave the fire department before twenty-five years of service, other than for a disability, he would receive only his contributions made to the pension, which, at the time of trial, were valued at approximately $27,741.

In October, 1998, the trial court rendered a judgment dissolving their marriage. The trial court awarded joint custody of the minor children to the parties, and ordered the defendant to pay child support to the plaintiff for the minor children in the amount of $255 per week. In addition to issuing certain orders of property distribution, the court ordered the defendant to pay the plaintiff periodic alimony of $200 per week. The court expressly ordered that the defendant's alimony obligation would not be terminable upon any remarriage or cohabitation of the plaintiff. The amount of alimony ordered would be modifiable upward at any time, and

[2] "By 'vested' we refer to pension interests 'in which an employee has an irrevocable . . . right, in the future, to receive his or her account balance (under a defined contribution plan), or his or her accrued benefit (under a defined benefit plan), regardless of whether the employment relationship continues.' 3 Family Law and Practice (A. Rutkin ed., 1995) § 36.13 [2], p. 36-71; see id., § 37.11 [1] [b], pp. 37-157 through 37-159; see also 2 Valuation and Distribution of Marital Property (J. McCahey ed., 1991) § 23.02 [2] [a], p. 23-8; see *Thompson* v. *Thompson*, 183 Conn. 96, 100 n.3, 438 A.2d 839 (1981) ('[v]ested benefits . . . refer to those accrued benefits to which the employee has a nonforfeitable right to receive at retirement age whether or not he is in the service of the employer at that time'). Prior to vesting, an employee's accrued benefits may be forfeited by termination of employment. Once the employee with a vested pension interest reaches the age of retirement and elects to retire, his rights are said to be vested and matured. See 3 Family Law and Practice, supra, § 36.13 [2], p. 36-71, and § 37.11 [1] [b], p. 37-159; see also *Majauskas* v. *Majauskas*, 61 N.Y.2d 481, 491, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984)." *Krafick* v. *Krafick*, 234 Conn. 783, 788–89 n.12, 663 A.2d 365 (1995).

modifiable downward in the event that the plaintiff actually began to receive payments pursuant to, what the trial court characterized as, a qualified domestic relations order, or QDRO.[3]

Pursuant to that domestic relations order, the trial court ordered "that until such time, if any, as [the] defendant's right to receive retirement benefits from the city of Meriden vests, [the] plaintiff shall be the beneficiary of, and be entitled to receive, the refundable contributions, with accrued interest or yield thereon, if any, made by or on behalf of [the] defendant if such contributions, etc., shall ever become payable by the city of Meriden. And there is hereby entered a [domestic relations order] assigning to [the] plaintiff one half of the disability and/or retirement benefits earned by [the defendant] from his employment by the city of Meriden for his labors for said city through the date of this decree. (The court is aware that [the] defendant's right to receive retirement benefits has not yet vested.)" The court further ordered "that the defendant shall maintain, and promptly pay all premiums therefor, life insurance on his life in the unencumbered face amount of $100,000.00 payable to [the] plaintiff until such time as the plaintiff begins to receive payments pursuant to the [domestic relations order]. . . ."

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that, in for-

---

[3] We note that, although the trial court entered what it characterized as a QDRO, "[a] QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. See 29 U.S.C. § 1056 (d) (3) (b) for the requirements of a valid QDRO. . . . [T]he procedures set forth in the United States Code for a QDRO do not apply to a governmental pension plan . . . see 29 U.S.C. § 1003 (b) . . . ." *Krafick* v. *Krafick*, 234 Conn. 783, 786–87 n.4, 663 A.2d 365 (1995). Because neither of the parties has claimed any impropriety with respect to this linguistic aspect of the trial court's order, we do not address, beyond our statement in this footnote, the trial court's characterization. Instead, however, we refer to the order as a domestic relations order.

mulating its financial orders, the trial court improperly had awarded the unvested pension benefits to the plaintiff instead of utilizing the known present value of the contributions into the pension. Specifically, the defendant argued that, because the only evidence presented at trial with respect to the pension's value was the present value of his contributions into the pension fund, there was no evidence in the record to support the trial court's treatment of the unvested pension benefits. The Appellate Court affirmed the judgment of the trial court. *Bender* v. *Bender*, 60 Conn. App. 252, 257, 758 A.2d 890 (2000).

The defendant filed a petition for certification to appeal from the judgment of the Appellate Court to this court. We granted certification limited to the following issue: "Did the Appellate Court properly conclude that the trial court's award of the defendant's nonvested pension benefit was not impermissibly speculative?" *Bender* v. *Bender*, 255 Conn. 914, 763 A.2d 1037 (2000). After reviewing the record and the parties' briefs, however, we rephrase the issue as follows: "In a dissolution action, are unvested pension benefits property subject to equitable distribution pursuant to § 46b-81, and, if so, how should they be valued and distributed?" See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 648–49 n.1, 674 A.2d 821 (1996) (this court may rephrase certified questions in order to render them more accurate in framing issues that case presents). We conclude that the unvested pension benefits are property subject to equitable distribution, and we set out in part II of this opinion the permissible methods of valuation and distribution. Accordingly, we affirm the judgment of the Appellate Court.

Before reaching the defendant's claim on appeal, we briefly address the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused

its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . *Knock* v. *Knock*, 224 Conn. 776, 795, 621 A.2d 267 (1993)." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 282–83, 752 A.2d 1023 (1999).

As a general framework, "[t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution). [*Krafick* v. *Krafick*, 234 Conn. 783, 792–93, 663 A.2d 365 (1995)]." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 364, 752 A.2d 1000 (1998).

The certified question requires us to address: (1) whether unvested pension benefits, as a threshold matter, are "property" within the meaning of § 46b-81 subject to equitable distribution upon dissolution; and (2) if so, what methods are available to value and distribute such benefits. We address these in turn.

I

We distill from the defendant's brief his claim that his unvested pension benefits are not property subject to equitable distribution under § 46b-81. The plaintiff claims, to the contrary, that the defendant's interest in his unvested pension benefits is not a mere expectancy, but rather, a presently existing property interest, and, therefore, his unvested pension benefits constitute

property subject to equitable distribution.[4] We agree with the plaintiff.

The threshold question of whether unvested pension benefits constitute "property" pursuant to § 46b-81 presents a question of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Id.; *Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services*, 231 Conn. 355, 362, 650 A.2d 147 (1994); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755–56, 601 A.2d 1005 (1992)." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431–32, 692 A.2d 742 (1997).

"The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of *the property*, if any,

---

[4] Following oral argument before the court in this case, we invited the American Academy of Matrimonial Lawyers and the Connecticut Bar Association Family Law Section to appear as amici curiae, and to address the following question: "Under the facts of this case, is the defendant's unvested pension 'property' for purposes of General Statutes § 46b-81?" The amici filed a joint brief, both contending that the defendant's unvested pension is "property" for purposes of § 46b-81, and that the trial court's award of that property interest was permissible.

to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme. See 3 Family Law and Practice (A. Rutkin ed., 1995) § 37.01 [2] [a] [v], p. 37-19. [Section 46b-81] does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power. A. Rutkin, E. Effron & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice with Forms (1991) § 27.1, pp. 398–400. . . . *Krafick* v. *Krafick*, [supra, 234 Conn. 792]. . . .

"Neither § 46b-81 nor any other closely related statute defines property or identifies the types of property interests that are subject to equitable distribution in dissolution proceedings. When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries. See General Statutes § 1-1 (a); *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994).

"Black's Law Dictionary (6th Ed. 1990) defines property as the term commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, fran-

chises, and incorporeal hereditaments . . . . The term has been defined elsewhere in the General Statutes. See General Statutes § 52-278a (e) (for purposes of attachment, property means any present or future interest in real or personal property, goods, chattels or choses in action . . .). Rather than narrow the plain meaning of the term property from its ordinarily comprehensive scope, in enacting § 46b-81, the legislature acted to expand the range of resources subject to the trial court's power of division, and did not intend that property should be given a narrow construction. *Bornemann* v. *Bornemann*, 245 Conn. 508, 515–16, 752 A.2d 978 (1998)." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Lopiano* v. *Lopiano*, supra, 247 Conn. 363–65.

We repeatedly have stated, and several recent decisions from this court reflect, that trial courts are empowered "to deal broadly with property and its equitable division incident to dissolution proceedings." Id., 365. Although the issue of whether unvested pension benefits are property subject to equitable distribution under § 46b-81 is one of first impression for this court, those cases guide our resolution of the present case.

In *Thompson* v. *Thompson*, 183 Conn. 96, 98, 438 A.2d 839 (1981), a dissolution action involving property division and alimony orders, the plaintiff claimed that the trial court, in formulating its orders, had abused its discretion by relying on evidence of unvested pension benefits and a potential inheritance that the plaintiff might receive. With respect to the unvested pension benefits, we concluded that they were not "too speculative in nature to be considered by a court fashioning alimony and property assignment orders." Id., 100. We reasoned that "[p]ension benefits represent a form of deferred compensation for services rendered. *In re Marriage of Brown*, 15 Cal. 3d 838, 845, 544 P.2d 561 [126 Cal. Rptr. 633] (1976). As such they are conceptu-

ally similar to wages. General Statutes §§ 46b-81 (c) and 46b-82 both require the trial court to consider, inter alia, the occupation and the amount and sources of income of each of the parties when ordering property assignments and alimony. Just as current and future wages are properly taken into account under these statutes, so may unaccrued pension benefits, a source of future income, be considered. See Foster & Freed, 'Spousal Rights in Retirement and Pension Benefits,' 16 J. of Fam. L. 187, 196–200 (1977–78)." *Thompson* v. *Thompson*, supra, 100.

Furthermore, in *Thompson*, we rejected the plaintiff's argument that unvested pension benefits were as speculative as an expected inheritance. Id. In that connection, we stated: "It is true that the exact amount of the benefits to be received often will depend upon whether the employee survives his retirement age, how long he lives after retirement and what his compensation level is during his remaining years of service. But these contingencies are susceptible to reasonably accurate quantification. See Hardie, 'Pay Now or Later: Alternatives in the Disposition of Retirement Benefits on Divorce,' 53 Calif. St. B.J. 106, 108–109 (1978). The present value of a pension benefit may be arrived at by using generally accepted actuarial principles to discount for mortality, interest and the probability of the employee remaining with the employer until retirement age. Id. In contrast, the present value of a potential inheritance is extremely difficult to calculate, largely because of the unquantifiable aspects of human nature which often cause wills to be revised. See *Krause* v. *Krause*, [174 Conn. 361, 387 A.2d 548 (1978)]. We conclude, therefore, that the court did not err in *considering* evidence of the plaintiff's unaccrued pension rights." (Emphasis added.) *Thompson* v. *Thompson*, supra, 183 Conn. 100–101. Accordingly, we affirmed the judgment.[5] Id., 101.

---

[5] In this regard, it is worth emphasizing that the trial court in *Thompson* merely had *considered* evidence of the unvested pension benefits and did

In *Krafick* v. *Krafick*, supra, 234 Conn. 793, we concluded that *vested* pension benefits constitute property for the purposes of equitable distribution pursuant to § 46b-81. In doing so, we emphasized that a broad construction of the term "property" is consistent with the purpose of § 46b-81, namely, "to recognize that marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—*the fruits of which* are distributable at divorce." (Emphasis in original; internal quotation marks omitted.) Id., 795; see also id., 796 ("[p]ension benefits are widely recognized as among the most valuable assets that parties have when a marriage ends"). We also recognized, however, that our broad definition of "property," as used in § 46b-81, was not without some limitation, and that "§ 46b-81 applies only to presently existing property interests, not mere expectancies." (Internal quotation marks omitted.) Id., 797. We thereafter engaged in an analysis whereby we determined that the contingencies to which the vested pension benefits were subject did not render them a mere expectancy because the holder of the benefits had a presently existing interest by way of an enforceable contract right. Id., 797–98; see also id., 794–95 ("Pension benefits represent a form of deferred compensation for services rendered. . . . [Vested pension benefits] are contract rights of value . . . . As contractual rights, pension benefits are a type of *intangible* property . . . ." [Cita-

not consider them property to be divided. In light of our affirmance in *Thompson*, our reference to using actuarial principles to arrive at the pension benefits' present value cannot be read so broadly as to support the notion that this court already has determined that unvested pension benefits are property subject to equitable division, and that the present value method is the appropriate methodology. Compare *Krafick* v. *Krafick*, supra, 234 Conn. 794–95 n.20 ("[w]e reject the . . . assertion that *Thompson* v. *Thompson*, supra, 183 Conn. 96, settled either the status of vested pension benefits under § 46b-81 or the proper valuation of such benefits").

tions omitted; emphasis in original; internal quotation marks omitted.]).

In *Simmons* v. *Simmons*, 244 Conn. 158, 165, 708 A.2d 949 (1998), we concluded that a medical degree earned by one spouse during the marriage was not property within the meaning of § 46b-81. We distinguished the medical degree in *Simmons* from the vested, unmatured pension benefits at issue in *Krafick*, reasoning that the medical degree did not involve a presently existing, enforceable right to receive income in the future. Id., 167. Instead, the medical degree represented only an opportunity to earn future income, and as such, was a mere expectancy interest, not distributable under § 46b-81. Id., 170.

Thereafter, in *Bornemann* v. *Bornemann*, supra, 245 Conn. 510, one of the issues before us was whether the trial court properly had determined that certain *unvested*, in the sense of *granted* but not yet exercisable, stock options were subject to equitable distribution under § 46b-81. Although the stock options were not exercisable at the time of dissolution and the defendant's ability to exercise the options on their subsequent maturity dates was contingent upon his adhering to certain terms, we concluded that such stock options, which we defined as an offer by the employer to sell stock to the employee at a future date and for a predetermined price; id., 517; were analogous to the pension benefits in *Krafick*, because the holder of either enjoyed the right to receive a promised benefit under prescribed conditions. Id. We reasoned that, if the employer attempted to withdraw the offer of stock options, the employee would have a " 'chose in action' " in contract against the employer. Id. Despite the fact that the stock options had not yet vested, they nonetheless created an enforceable right in the defendant. Id., 517–18. We concluded that the defendant's interest in the stock options amounted to more than a mere expectancy,

because so long as the defendant abided by certain terms in his termination agreement, namely, not accepting employment that conflicted with the employer's interests, not revealing any of the employer's trade secrets, and not bringing any claims against the employer for conduct that preceded the date of the agreement, he was entitled to exercise the options, and would have had a cause of action for breach of contract had the employer refused to allow him to do so. Id., 518. We therefore concluded that such a presently existing, contractual interest was an interest in property that fell within the broad definition of property under § 46b-81. Id.

In *Bornemann,* we further noted that our conclusion therein was consistent with the conclusions of other jurisdictions that treated unvested stock options as property on the basis that the options create a contractual right in the employee who holds them, which is a valuable form of intangible property. Id., 518–19. In that same connection, we also analogized our conclusion to the conclusions of other jurisdictions that have decided that similar sources of deferred income, such as pension benefits and trust interests, *whether vested or not,* constitute property subject to distribution, "provided that the contingent nature of the interest does not render the interest a mere expectancy." Id., 519; see also *In re Marriage of Grubb,* 745 P.2d 661, 666–67 (Colo. 1987) (where husband's right to receive pension benefits was contingent on his continued employment and survival to retirement age, court considered benefits to have already been earned; contingency affected only present value of benefits).

Finally, in *Lopiano* v. *Lopiano,* supra, 247 Conn. 371, we employed the same analytical rubric used in the cases just discussed, and concluded that a personal injury award, received as compensation for, among other things, the plaintiff's pain and suffering and post-

dissolution lost wages, is property available, in its entirety, for equitable distribution pursuant to § 46b-81. We reasoned that the judgment in the plaintiff's personal injury case represented, at the time of the dissolution, a presently existing property interest. Id., 367.

These cases reflect a common theme, namely, that in determining whether a certain interest is property subject to equitable distribution under § 46b-81, we look to whether a party's expectation of a benefit attached to that interest was too speculative to constitute divisible marital property. See *Simmons* v. *Simmons*, supra, 244 Conn. 165 ("[w]hether the interest of a party to a dissolution is subject to distribution pursuant to § 46b-81, depends on whether that interest is: [1] a presently existing property interest or [2] a mere expectancy"). In cases in which an interest was so speculative as to constitute a mere expectancy, we concluded that it was not property subject to equitable distribution; see id., 170 (medical degree); *Rubin* v. *Rubin*, 204 Conn. 224, 236–39, 527 A.2d 1184 (1987) (expected inheritance); whereas, in cases in which an interest was not so speculative as to constitute a mere expectancy, but rather a presently existing interest in property, we treated it as property subject to equitable distribution. See *Lopiano* v. *Lopiano*, supra, 247 Conn. 371 (personal injury award); *Bornemann* v. *Bornemann*, supra, 245 Conn. 518 (unvested stock options); *Krafick* v. *Krafick*, supra, 234 Conn. 785 (vested pension benefits).

In accordance with the purposes of § 46b-81, our adherence to that theme has outweighed our adherence to strict contract or property principles in determining whether a certain interest constitutes property for purposes of equitable distribution. Traditional property principles, although relevant; see, e.g., *Krafick* v. *Krafick*, supra, 234 Conn. 794–95; are not determinative of whether an interest constitutes property under § 46b-81. For example, as stated previously, at issue in *Sim-*

*mons* was whether the plaintiff's medical degree constituted property subject to equitable distribution pursuant to § 46b-81. *Simmons* v. *Simmons*, supra, 244 Conn. 162. Although an advanced degree could be considered property under traditional property principles, we concluded in *Simmons* that such a degree was not property *for equitable distribution purposes* because "an advanced degree entails no presently existing, enforceable right to receive any particular income in the future. It represents nothing more than an opportunity for the degree holder, through his or her own efforts, in the absence of any contingency that might limit or frustrate those efforts, to earn income in the future." Id., 167. In other words, although an advanced degree has certain characteristics of property, the potential for future income related thereto was too speculative for the degree to be considered divisible marital property. Id., 168. Accordingly, we concluded that the medical degree properly was classified as an expectancy, and therefore was not subject to equitable distribution. Id.

In the present case, it is, of course, theoretically possible that the defendant's pension will not vest, whether because of the defendant's resignation, misconduct on his part that results in his dismissal, the defendant's death, or a decision on the part of the municipality to discontinue the pension plan. We conclude, however, that the defendant's expectation in his pension plan, as a practical matter, is sufficiently concrete, reasonable and justifiable as to constitute a presently existing property interest for equitable distribution purposes. Therefore, his unvested pension benefits are not too speculative to be considered property subject to equitable distribution under § 46b-81.[6] We believe that any

[6] We further note that the record is silent with respect to any rights that the defendant may have pursuant to a collective bargaining agreement, if one applies, should the town choose to discontinue the pension fund and return the defendant's contributions. We do not pass on any other rights the defendant may have in such a situation.

uncertainty regarding vesting is more appropriately handled in the valuation and distribution stages, rather than in the classification stage. B. Turner, Equitable Distribution of Property (2d Ed. 1994) § 6.09, p. 330; *Cohen* v. *Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996) ("[c]ontingencies should be considered on the issue of method of distribution, perhaps, but not on the determination of classification").[7]

Our conclusion that the defendant's unvested pension benefits are not a mere expectancy is consistent with the nature of retirement benefits, and the fact that employers and employees treat retirement benefits as property in the workplace. See B. Turner, supra, § 6.09, p. 328. We previously have stated that "[p]ension benefits represent a form of deferred compensation for services rendered"; (internal quotation marks omitted) *Krafick* v. *Krafick*, supra, 234 Conn. 794; because an employee earning pension benefits presumably would receive higher current wages if he or she did not participate in the pension plan. "Most retirement plans permit the employee to take a reduction in present salary in exchange for increased future retirement benefits, and employees frequently make use of these provisions. Likewise, employers frequently use lucrative retirement packages in lieu of additional salary to attract and retain desirable employees. If retirement benefits were truly only [a mere expectancy], employers and employees

---

[7] Thus, in the present case, the classification of the defendant's unvested pension benefit does not depend on his length of service at the date of the dissolution, or on the fact that the benefits may be subject to valuation. If, for example, that length of service were nineteen months rather than nineteen years, his unvested pension would, nonetheless, constitute a cognizable property interest; but the trial court could choose simply not to distribute it because its value—not its classification—was too insignificant or conjectural in the marital scheme of things. Thus, we reject the suggestion of the dissent that we have collapsed the classification stage of the analysis into the valuation stage.

would not treat them as a substitute for present wages."[8]
B. Turner, supra, § 6.09, pp. 328–29.

Furthermore, the theme running through this area of our jurisprudence, which we articulated previously and to which we adhere in the present case, pays mindful consideration to the equitable purpose of our statutory distribution scheme, rather than to mechanically applied rules of property law. In order to achieve justice, equity looks to substance, and not to mere form. *Natu-*

---

[8] We note that our conclusion is also consistent with the majority of other appellate courts that have addressed this issue. See, e.g., *Jackson* v. *Jackson*, 656 So. 2d 875, 877 (Ala. App. 1995); *Laing* v. *Laing*, 741 P.2d 649, 656 (Alaska 1987); *Van Loan* v. *Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214 (1977); *In re Marriage of Brown*, supra, 15 Cal. 3d 847; *Robert C.S.* v. *Barbara J.S.*, 434 A.2d 383, 387 (Del. 1981); *Barbour* v. *Barbour*, 464 A.2d 915, 919–20 n.6 (D.C. 1983) (dicta); *Courtney* v. *Courtney*, 256 Ga. 97, 99, 344 S.E.2d 421 (1986); *Linson* v. *Linson*, 1 Haw. App. 272, 278, 618 P.2d 748 (1980); *Shill* v. *Shill*, 100 Idaho 433, 436, 599 P.2d 1004 (1979): *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 658–59, 397 N.E.2d 511 (1979); *Poe* v. *Poe*, 711 S.W.2d 849, 851 (Ky. App. 1986); *Stotler* v. *Wood*, 687 A.2d 636, 638 (Me. 1996); *Deering* v. *Deering*, 292 Md. 115, 128, 437 A.2d 883 (1981); *Janssen* v. *Janssen*, 331 N.W.2d 752, 754 (Minn. 1983); *In re Marriage of Ward*, 955 S.W.2d 17, 20 (Mo. App. 1997); *In re Marriage of Kis*, 196 Mont. 296, 300, 639 P.2d 1151 (1982); *Gemma* v. *Gemma*, 105 Nev. 458, 459, 778 P.2d 429 (1989); *Moore* v. *Moore*, 114 N.J. 147, 158, 553 A.2d 20 (1989); *Walentowski* v. *Walentowski*, 100 N.M. 484, 486, 672 P.2d 657 (1983); *Burns* v. *Burns*, 84 N.Y.2d 369, 376, 643 N.E.2d 80, 618 N.Y.S.2d 761 (1994); *Delorey* v. *Delorey*, 357 N.W.2d 488, 491 (N.D. 1984); *Carpenter* v. *Carpenter*, 657 P.2d 646, 651 (Okla. 1983); *Berrington* v. *Berrington*, 409 Pa. Super. 355, 360, 598 A.2d 31 (1991), aff'd, 534 Pa. 393, 633 A.2d 589 (1993); *Ball* v. *Ball*, 314 S.C. 445, 447, 445 S.E.2d 449 (1994); *Grode* v. *Grode*, 543 N.W.2d 795, 802 (S.D. 1996); *Cohen* v. *Cohen*, supra, 937 S.W.2d 825; *Cearley* v. *Cearley*, 544 S.W.2d 661, 666 (Tex. 1976); *Woodward* v. *Woodward*, 656 P.2d 431, 433 (Utah 1982); *Wilder* v. *Wilder*, 85 Wash. 2d 364, 367, 534 P.2d 1355 (1975); *Butcher* v. *Butcher*, 178 W. Va. 33, 40 n.15, 357 S.E.2d 226 (1987) (although dealing specifically with vested benefits, court, in dicta, acknowledged "that there can be equitable distribution made of nonvested pension benefits" as well); *Broadhead* v. *Broadhead*, 737 P.2d 731, 737 (Wyo. 1987). Several states also statutorily define "property" to include unvested pension benefits for purposes of their equitable distribution schemes. See, e.g., Florida, Fla. Stat. c. 61.076 (2001); Kansas, Kan. Stat. Ann. § 23-201 (b) (Sup. 2000); New Hampshire, N.H. Rev. Stat. Ann. § 458:16-a I (Sup. 2000); Oregon, Or. Rev. Stat. § 107.105 (1) (f) (Sup. 1998).

*ral Harmony, Inc.* v. *Normand,* 211 Conn. 145, 149, 558 A.2d 231 (1989). In view of that equitable purpose, the fact remains that nineteen of the twenty-five years necessary for the vesting of the defendant's pension benefits were years in which the parties were partners in marriage. See *Krafick* v. *Krafick,* supra, 234 Conn. 795 (purpose of § 46b-81 is to recognize that "marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—*the fruits of which* are distributable at divorce" [emphasis in original; internal quotation marks omitted]). We recognize that retirement benefits, whether vested or unvested, are significant marital assets, and may be, as in the present case, the only significant marital asset. To consider the pension benefits a nondivisible marital asset would be to blink our eyes at reality.

The defendant argues that the portion of his pension benefits that "would result from [his] future labors" is not subject to equitable distribution, and that the only portion subject to equitable distribution is the amount of the contributions in the fund at the time of dissolution. We disagree. The fact that a portion of the pension benefits, once vested, will represent the defendant's service to the fire department after the dissolution does not preclude us from classifying the entire unvested pension as marital property. See *Lopiano* v. *Lopiano,* supra, 247 Conn. 367 n.5 ("although some portion of the personal injury award in the present case represents lost future wages, and, for that matter, future pain and suffering, that fact does not preclude this court from characterizing the award, in its entirety, as marital property").[9]

---

[9] We note that, as a practical matter, by awarding the plaintiff "one half of the disability and/or retirement benefits earned by [the defendant] from his employment by the city of Meriden for his labors for said city *through the date of this decree*"; (emphasis added); the trial court recognized that a portion of the pension plan would be earned after the dissolution.

We disagree with the dissent that we have, by this analysis, overruled our prior cases defining property for purposes of our equitable distribution statute. We have, instead, built upon their foundation. Where we and the dissent part company is over the appropriate reading of our prior jurisprudence. We acknowledge, as we have repeatedly done herein, that in some cases we have determined that certain interests constituted property where there were enforceable contract rights therein, while in others we have determined that certain interests were too speculative to constitute property where there were no such rights. We do not read those cases, however, as the dissent does, to mark out a hard and fast line requiring such rights as the sine qua non of "property" under § 46b-81.

As we stated in *Bornemann*, "in enacting § 46b-81, the legislature acted to expand the range of resources subject to the trial court's power of division, and did not intend that property should be given a narrow construction." *Bornemann* v. *Bornemann*, supra, 245 Conn. 515–16. That interpretation was consistent with our approach in *Krafick*, in which we stated that the purpose of the equitable distribution statute is "to recognize that marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—*the fruits of which* are distributable at divorce." (Emphasis in original; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 795. That legislative purpose counsels against interpreting the term "property" so as to be strictly limited to the confines of traditional property law, defined solely by enforceable contract rights, to the exclusion of other interests that, as in the present case, are appropriately recognized as property within the marital context. Thus, we think that the common theme that we have identified in our prior jurispru-

dence is fully consistent with both the language and purpose of the statute.

We also reject the dissent's suggestion that the analysis we employ here is inconsistent with our decision in *Rubin* v. *Rubin*, supra, 204 Conn. 236–39. *Rubin* involved a potential inheritance, which, by its nature, is dependent on "the unquantifiable aspects of human nature which often cause wills to be revised." *Thompson* v. *Thompson*, supra, 183 Conn. 101. Unvested pension benefits, however, although dependent on certain future contingencies such as length of service and age, are simply not in that same speculative category. Moreover, unlike a potential inheritance, pension benefits represent a trade-off for potentially higher wages not earned during the marriage; they often represent, as in the present case, the only or principal material asset; and they are treated by employers and employees as property in the workplace. Thus, they represent the fruits of the marital partnership in practical and emotional ways not shared by potential inheritances.

## II

Having concluded that unvested pension benefits are property for equitable distribution under § 46b-81, we next address the methods available to value and distribute such benefits. There are three general approaches to address the problems of valuation and distribution of pension benefits: (1) the present value method, also called the immediate offset method; (2) the present division method of deferred distribution; and (3) the reserved jurisdiction method of deferred distribution.

First, the present value or immediate offset approach " 'requires the court to determine the present value of the pension benefits, decide the portion to which the nonemployee spouse is entitled, and award other property to the nonemployee spouse as an offset to the pension benefits to which he or she is otherwise enti-

tled.' 3 Family Law and Practice, supra, § 36.13 [3], p. 36-72; see *In re Marriage of Brown*, supra, 15 Cal. 3d 848 (recognizing offset method); *In re Marriage of Grubb*, supra, 745 P.2d 666 (same); *Robert C.S.* v. *Barbara J.S.*, 434 A.2d 383, 387–88 (Del. 1981) (same); *Kikkert* v. *Kikkert*, 177 N.J. Super. 471, 477–78, 427 A.2d 76, aff'd, 88 N.J. 4, 438 A.2d 317 (1981) (same); *McDermott* v. *McDermott*, 150 Vt. 258, 259–60, 552 A.2d 786 (1989) (same); see also 3 Family Law and Practice, supra, § 37.11 [2] [a], pp. 37-161 through 37-163, and § 38.04 [2] [f], pp. 38-39 through 38-42." *Krafick* v. *Krafick*, supra, 234 Conn. 800.

The present value approach has the advantage of effecting a severance of the parties' economic ties. See *Robert C.S.* v. *Barbara J.S.*, supra, 434 A.2d 388; *Kikkert* v. *Kikkert*, supra, 177 N.J. Super. 477–78 ("Although fixing present value under such circumstances may be difficult and inexact, nevertheless immediate final resolution of the method of distribution is to be encouraged, preferably by voluntary agreement whenever possible. Long term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible."); 3 Family Law and Practice, supra, § 36.13 [3] [a], p. 36-73. The present value approach also avoids extended supervision and enforcement by the courts, thereby saving the parties and the courts the time and expense of future litigation. See *Hunsinger* v. *Hunsinger*, 381 Pa. Super. 453, 460–61, 554 A.2d 89 (1989); B. Turner, supra, § 6.11, p. 347.

The major weakness of this approach is that it requires the court to base its division of the unvested pension benefits upon actuarial probabilities rather than actual events. B. Turner, supra, § 6.11, p. 347. It is possible, therefore, that, under the present value method, a pension, to which the court has assigned

a present value and divided accordingly, will not be received by the owning spouse. This method therefore "places the entire risk of forfeiture before maturity on the employee spouse." *Krafick* v. *Krafick*, supra, 234 Conn. 802; see also B. Turner, supra, § 6.11, pp. 347–49. Stated another way, if the present value approach is applied and the pension never vests, the nonowning spouse will have received, at the time of dissolution, other property in return for a share in a pension that never yields an actual benefit.

"Further, this method is not feasible when there are insufficient other assets by which to offset the value of the pension; see 2 Valuation and Distribution of Marital Property (J. McCahey ed., 1991) § 23.02 [4], pp. 23-21 through 23-25; 3 Family Law and Practice, supra, § 36.13 [3] [a], pp. 36-73 through 36-77; or 'where no present value can be established [by expert testimony] and the parties are unable to reach agreement' as to the value of the pension. *Kikkert* v. *Kikkert*, supra, 177 N.J. Super. 478. If there are sufficient other assets, however, several courts have favored this approach. See, e.g., *Johnson* v. *Johnson*, 131 Ariz. 38, 42, 638 P.2d 705, modified and affirmed, 131 Ariz. 47, 638 P.2d 714 (1981); *Taylor* v. *Taylor*, 329 N.W.2d 795, 798–99 (Minn. 1983); *Kuchta* v. *Kuchta*, 636 S.W.2d 663, 666 (Mo. 1982); *Kikkert* v. *Kikkert*, supra, 477–78; *Endy* v. *Endy*, 412 Pa. Super. 398, 404–405, 603 A.2d 641 (1992); *Holbrook* v. *Holbrook*, 103 Wis. 2d 327, 341–43, 309 N.W.2d 343 ([App.] 1981)." *Krafick* v. *Krafick*, supra, 234 Conn. 802.

Because, under the present value method, the trial court awards the entire pension to the owning spouse and gives the nonowning spouse cash or other property equal to his or her interest in the pension, the court must determine the pension's present value. Calculating that value may require taking actuarial testimony, which generally involves: (1) determining future benefits, taking into consideration the date of the employee spouse's

retirement, postmarital salary, future taxes and the duration of benefits; and (2) discounting for present value, the probability of mortality and the probability of forfeiture. B. Turner, supra, § 6.12, pp. 367–71; 3 Family Law and Practice, supra, § 36.13 [3] [a], p. 36-73. "As we observed in *Thompson* v. *Thompson*, supra, 183 Conn. 101, 'these contingencies are susceptible to reasonably accurate quantification . . . by using generally accepted actuarial principles.' . . . See also A. Rutkin, E. Effron & K. Hogan, supra, § 27.20, pp. 423–25 (discussing calculation of present value of various types of deferred compensation plans). Once the court has determined the present value of the benefits at issue, it may, in light of relevant equitable considerations, award those benefits to the employee spouse and/or may offset the nonemployee's equitable share in the pension benefits with an award of other assets. See *Majauskas* v. *Majauskas*, [61 N.Y.2d 481, 485–86, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984)]."[10] *Krafick* v. *Krafick*, supra, 234 Conn. 800–801.

---

[10] Another valuation method under the present value approach is the total contributions method, whereby "the value of the plan is the total value of the contributions made to it by or on behalf of the employee." B. Turner, supra, § 6.12, p. 374. Although this method is inaccurate because it does not recognize the appreciation of the contributions; id.; some courts have employed this method in cases in which there was no better evidence in the record to ascertain the pension plan's value. See, e.g., *Addis* v. *Addis*, 288 Ark. 205, 703 S.W.2d 852 (1986); *Barr* v. *Barr*, 58 Md. App. 569, 473 A.2d 1300, cert. denied, 300 Md. 794, 481 A.2d 239 (1984); *Ellis* v. *Ellis*, 802 S.W.2d 546 (Mo. App. 1991) (value of plan uncertain; $300,000 value not error where at least $364,000 in contributions had been used to buy stock); *Haun* v. *Haun*, 677 S.W.2d 927 (Mo. App. 1984); *Cross* v. *Cross*, 185 W. Va. 414, 407 S.E.2d 720 (1991) (method not favored, but proper where no other evidence presented).

We note that in *Bornemann* v. *Bornemann*, supra, 245 Conn. 534–35, we employed a similar technique to determine, in the absence of any expert testimony, the present value of unvested stock options. In *Bornemann*, we stated: "Although the evidence before the court as to the value of the [unvested] stock options certainly could have been provided in much greater detail and with much greater precision—perhaps by an expert witness who could have offered projections as to the present value of the [unvested] options—neither party chose to introduce such evidence. . . . Instead, on

"The second and third recognized methods for valuing and distributing pensions involve delaying distribution until the pension matures. See *Fondi* v. *Fondi*, [106 Nev. 856, 859, 802 P.2d 1264 (1990)]; *Hodgins* v. *Hodgins*, 126 N.H. 711, 715, 497 A.2d 1187 (1985). Under the 'present division' method, the trial court determines at the time of trial, the percentage share of the pension benefits to which the nonemployee spouse is entitled. . . . In other words, the court will declare that, upon maturity, a fixed percentage of the pension be distributed to each spouse. *In re Marriage of Brown*, supra, 15 Cal. 3d 838; see *Workman* v. *Workman*, 106 N.C. App. 562, 568–69, 418 S.E.2d 269 (1992).

"Alternatively, under the 'reserved jurisdiction' method, [a variant of the present division method of deferred distribution] the trial court reserves jurisdiction to distribute the pension until benefits have matured. *Once matured*, the trial court will determine the proper share to which each party is entitled and divide the benefits accordingly. *McDermott* v. *McDermott*, supra, 150 Vt. 259–60 (such a method allows a court 'to base its distribution upon actual figures [as to what benefits are being paid] rather than assumptions as to retirement age and other variables'); 2 Valuation and Distribution of Marital Property, supra, § 23.02 [4], pp. 23-21 through 23-25; 3 Family Law and Practice, supra, § 37.11 [2] [b], pp. 37-163 through 37-164; see also *Whitfield* v. *Whitfield*, 222 N.J. Super. 36, 48, 535 A.2d 986 (1987) (recognizing but disapproving reserved jurisdiction approach to pension valuation and distribu-

---

the basis of [evidence of the termination agreement, the imminent vesting dates, the contract price at which the options could be exercised, and the price at which the stock was then trading], the court reasonably could have estimated the present value of the [unvested stock] options." Id. Because, however, in the present case the total contributions method—a method available to determine the unvested pension benefits' present value in the absence of expert testimony—is not presented squarely to us, we neither endorse nor reject it.

tion)." (Citation omitted; emphasis added.) *Krafick* v. *Krafick*, supra, 234 Conn. 803.

A significant advantage to the deferred distribution approaches is that, because they delay distribution until the pension benefits have vested and matured, they impose equally on the parties the risk of forfeiture. 2 Valuation and Distribution of Marital Property, supra, § 23.02 [4] [c], pp. 23-21 through 23-24; see *In re Marriage of Brown*, supra, 15 Cal. 3d 838; *Robert C.S.* v. *Barbara J.S.*, supra, 434 A.2d 388; *In re Marriage of Curfman*, 446 N.W.2d 88 (Iowa 1989). "It credits both plaintiff and defendant with their proportionate labors toward the pension and divides equally the risk that the pensioner may not live or work long enough for the pension to be paid. If, in the interim, defendant dies or is separated from service, neither party recovers." *Whitfield* v. *Whitfield*, supra, 222 N.J. Super. 48. "These methods are favored when there are insufficient assets to offset the award of the pension to the employee spouse alone or when the evidence is inadequate to establish present value. *Laing* v. *Laing*, 741 P.2d 649, 657–58 (Alaska 1987)." *Krafick* v. *Krafick*, supra, 234 Conn. 804; see also B. Turner, supra, § 6.11, p. 361 (deferred distribution ensures that "there will be sufficient liquid funds available to meet the award").

One disadvantage of delaying distribution of the pension benefits is "the cost of prolonging the parties' entanglement with each other. 2 Valuation and Distribution of Marital Property, supra, § 23.02 [4], pp. 23-21 through 23-25; see *In re Marriage of Brown*, supra, 15 Cal. 3d 838; *Robert C.S.* v. *Barbara J.S.*, supra, 434 A.2d 388; *In re Marriage of Curfman*, [supra, 446 N.W.2d 88]." *Krafick* v. *Krafick*, supra, 234 Conn. 803–804. Another disadvantage arises from the fact that, under deferred distribution, the nonowning spouse's receipt of the pension benefits is contingent upon several factors, including the survival and continued service of

the owning spouse. See B. Turner, supra, § 6.11, pp. 350–51. If some event, such as the death, resignation or dismissal of the owning spouse, occurs so as to prevent the vesting of the pension benefits, the nonowning spouse may lose his or her retirement security. This risk would, of course, exist had the parties remained married. In order to minimize this risk, however, the court may choose, as it did in this case, to require the owning spouse to provide survivorship benefits or life insurance. Id., p. 351.

Although the advantages of the reserved jurisdiction approach are the same as those of the deferred distribution method, there are serious costs and uncertainties that result therefrom: (1) the court must hold a second hearing in order to determine the percentage to which the nonemployee spouse is entitled; and (2) witnesses must testify to events that occurred long ago. Id., p. 353. Consequently, because there is no particular advantage to the reserved jurisdiction method, it is seldomly employed. Id.; but see *Laing* v. *Laing*, supra, 741 P.2d 649; *DeLoach* v. *DeLoach*, 590 So. 2d 956 (Fla. App. 1991) (error to defer distribution without reserving jurisdiction).

We conclude that it is within the trial court's discretion, as it is in the context of vested pension benefits; see *Krafick* v. *Krafick*, supra, 234 Conn. 804; to choose, on a case-by-case basis, among the present value method, the present division method of deferred distribution, and any other valuation method that it deems appropriate in accordance with Connecticut law "that might better address the needs and interests of the parties. . . . The touchstone of valuation, as well as the ultimate distribution of pension benefits, is the court's power to act equitably. *Pasquariello* v. *Pasquar-*

*iello*, 168 Conn. 579, 585, 362 A.2d 835 (1975)."[11] (Citation omitted; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 804. We emphasize that the valuation and distribution methods that we have discussed of which the trial court may avail itself are not exclusive.[12] Beyond the present case, however, with the exception noted in the following discussion, we do not pass on the validity of any method applied in a given case.

We expressly reject, however, the reserved jurisdiction method. "On its face, the statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate. General Statutes § 46b-81 (a) provides in relevant part: 'At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .' Similarly, General Statutes § 46b-82 also provides that the court may order alimony '[a]t the time of entering the [divorce] decree . . . .' General Statutes § 46b-86, however, explicitly permits only modifications of 'any final order[s] for the periodic payment of permanent alimony . . . .' Consequently, the statute confers authority on the trial courts to retain

---

[11] We note that there is no general consensus among other jurisdictions as to the preferred valuation and division method. B. Turner, supra, § 6.11, p. 362. Although a few states require one specific method as a matter of law, most states give the trial court the discretion to choose among the methods. Many courts *prefer* deferred distribution where the court seeks to divide unvested pension benefits; see, e.g., *Koelsch* v. *Koelsch*, 148 Ariz. 176, 713 P.2d 1234 (1986); *Flynn* v. *Flynn*, 341 Pa. Super. 76, 491 A.2d 156 (1985); *Ball* v. *Ball*, 314 S.C. 445, 445 S.E.2d 449 (1994); whereas some states *require* an unvested pension to be divided by deferred distribution. See, e.g., *Root* v. *Root*, 851 P.2d 67 (Alaska 1993); *Glidewell* v. *Glidewell*, 859 S.W.2d 675 (Ky. App. 1993).

[12] For other potential valuation and distribution methods, see, e.g., B. Turner, supra, § 6.11, pp. 346–66 and § 6.12, pp. 366–76.

continuing jurisdiction over orders of periodic alimony, but not over lump sum alimony or property distributions pursuant to § 46b-81. *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980) (§ 46b-81 deprives trial court of continuing jurisdiction over assignment of property appurtenant to dissolution proceeding)." *Smith* v. *Smith*, supra, 249 Conn. 273–74.

The defendant claims that, because the only evidence presented at trial with respect to the present value of his pension concerned the amount of contributions made into the pension fund, namely, $27,741, the trial court improperly formulated its financial award. Stated another way, the defendant claims that the manner in which the trial court treated the pension was improper in the absence of expert, specifically actuarial, testimony. In this regard, it is important to reiterate what this case is not about. Contrary to the suggestion of the defendant, this is not a case in which the trial court determined the present value of the pension benefits at issue in the absence of any evidence to support its determination. In the present case, the trial court did not apply the present value method, but instead, in accordance with the principles discussed previously, applied the present division method of deferred distribution, thereby determining the percentage to which the plaintiff was entitled and delaying distribution until the benefits were payable. It was therefore unnecessary for the trial court to determine the benefits' present value, thereby also making it unnecessary to hear actuarial testimony regarding the value of the pension benefits.

In the present case, the trial court ordered, among other things, the defendant to pay the plaintiff periodic alimony of $200 per week, payable until the earlier of either's death. The trial court also entered a domestic relations order assigning to the plaintiff one half of the disability and retirement benefits earned by the

defendant through the date of the decree. The trial court ordered the defendant to procure and maintain a $100,000 life insurance policy on his life payable to the plaintiff, until such time when the plaintiff begins to receive payments pursuant to the domestic relations order. The defendant's alimony obligation was ordered not subject to modification, except that the amount could be modified upward at any time, and the amount could be modified downward if the plaintiff began to receive payments under the domestic relations order entered by the trial court. In such a circumstance, the alimony could not be modified to an amount less than one half of the amount that she was to receive prior to any domestic relations order payments. The trial court expressly ordered that neither remarriage nor cohabitation on the part of the plaintiff was a ground for the termination of the defendant's alimony obligation. Finally, the trial court ordered that, until the vesting of the defendant's pension benefits, the plaintiff shall be the beneficiary of the refundable contributions, if any were to become payable by the defendant's employer.

We conclude, as did the Appellate Court, that the trial court properly applied the present division method of deferred distribution, delaying distribution, in accordance with the domestic relations order, until the pension came into pay status. Specifically, the trial court determined, at the time of dissolution, the percentage of the benefits to which the plaintiff would be entitled in the event that the pension vested, namely, 50 percent of the pension benefits earned through the date of the dissolution decree. In order to minimize the risk of the nonvesting of the pension benefits, the trial court ordered the defendant to procure a $100,000 life insurance policy, of which the plaintiff would be the beneficiary, and which would be maintained until the vesting of the pension benefits. Accordingly, the trial court did

not abuse its discretion in its treatment of the defendant's unvested pension benefits.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT, KATZ and VERTEFEUILLE, Js., concurred.

ZARELLA, J., dissenting. The majority overrules a long line of prior decisions that defines the meaning of property for purposes of General Statutes § 46b-81. Because I believe that any redefinition is more appropriately the function of the legislature, I respectfully dissent.

The test for determining whether an interest, benefit or resource constitutes property for purposes of equitable distribution under § 46b-81 historically has been whether the party to the dissolution has an existing enforceable right to it. See, e.g., *Lopiano* v. *Lopiano*, 247 Conn. 356, 366–67, 752 A.2d 1000 (1998) (personal injury award); *Bornemann* v. *Bornemann*, 245 Conn. 508, 516–18, 752 A.2d 978 (1998) (stock options); *Krafick* v. *Krafick*, 234 Conn. 783, 797–98, 663 A.2d 365 (1995) (vested pension benefits). In cases in which such a right does not exist on the date of dissolution, we have refused to recognize that interest, benefit or resource as property subject to equitable distribution under § 46b-81. E.g., *Simmons* v. *Simmons*, 244 Conn. 158, 167, 708 A.2d 949 (1998) (medical degree); *Rubin* v. *Rubin*, 204 Conn. 224, 232, 527 A.2d 1184 (1987) (expected inheritance); see also *Smith* v. *Smith*, 249 Conn. 265, 274, 752 A.2d 1023 (1999) (expected interest in family trust); *Krause* v. *Krause*, 174 Conn. 361, 365, 387 A.2d 548 (1978) (expected inheritance). Today, the majority abandons that test. Although the defendant does not possess an existing enforceable right to unvested pension benefits, the majority concludes that a determination must be made as to whether the *expectancy* in those benefits is so *speculative* that they cannot qualify

as property available for distribution under § 46b-81. I believe that the majority's analysis and conclusion with respect to the designation of unvested pension benefits as property subject to equitable distribution under § 46b-81 are fundamentally contrary to the language of that statute and our case law.

I

As a preliminary matter, I note that whether a particular interest constitutes property under § 46b-81 raises an issue of statutory construction. "Statutory construction . . . presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, 258 Conn. 137, 147, 779 A.2d 124 (2001). "In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 302–303, 780 A.2d 916 (2001). "[W]e attempt to determine the intent of the legislature as expressed by the common and approved usage of the words in the statute." (Internal quotation marks omitted.) *Peck* v. *Jacquemin*, 196 Conn. 53, 65, 491 A.2d 1043 (1985). As the majority correctly states, " '[w]hen a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries.' " Accord *Krafick* v. *Krafick*, supra, 234 Conn. 794; see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). In construing a statute, we also presume that "the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citation omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 493, 778 A.2d 33 (2001).

The majority's new test for determining what constitutes property under § 46b-81 runs afoul of these basic

tenets of statutory construction. We previously have determined in a long line of cases that, in using the term "property," the legislature meant to encompass only those interests that are presently existing and enforceable at the time of dissolution of the marriage. See, e.g., *Lopiano* v. *Lopiano*, supra, 247 Conn. 366; *Rubin* v. *Rubin*, supra, 204 Conn. 230–31. Thus, any change in this definition is rightfully within the province of the legislature, not the judiciary.[1]

Under the majority's new test, a party's expectancy in a presently unvested pension shall be considered property under § 46b-81 as long as the party's *expectancy* of receiving benefits thereunder in the future is not too speculative. Such an interpretation of the term "property" renders subsection (c) of § 46b-81 superfluous. General Statutes § 46b-81 (c) provides in relevant part that, "[i]n fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider . . . [inter alia] *the opportunity of each [party] for future acquisition of capital assets and income. . . .*" (Emphasis added.) The majority's new test renders subsection (c) of § 46b-81 superfluous because, if the "opportunity" is too speculative, then it cannot be considered. Cf. *Thompson* v. *Thompson*, 183 Conn. 96, 100, 438 A.2d 839 (1981). If the opportunity is not too speculative, then the majority determines that it is property subject to valuation and distribution. The trial court must determine, therefore, whether a party's expectancy in future assets or income transforms those future assets or income into presently existing property available for equitable distribution at the time of dissolution instead of considering the parties' respective opportuni-

---

[1] Through the legislative process, a number of jurisdictions have expanded the meaning of "property" to include unvested pension rights. Fla. Stat. c. 61.076 (1) (2001); Kan. Stat. Ann. § 23-201 (b) (Sup. 2000) (military retirement benefits); N.H. Rev. Stat. Ann. § 458:16-a I (Sup. 2000); Or. Rev. Stat. § 107.105 (1) (f) (Sup. 1998). At least one jurisdiction, however, has proscribed it by statute. Ala. Code § 30-2-51 (b) (1998).

ties to acquire assets and income in the future, as the statute instructs. Thus, the majority's new test is contrary to the language of § 46b-81.

## II

The majority's new test also runs afoul of the relevant case law in that it changes, sub silentio, our established meaning of the term "property" in § 46b-81.[2] I agree with the majority that we often have stated that "[r]ather than narrow the plain meaning of the term property from its ordinarily comprehensive scope, in enacting § 46b-81, the legislature acted to expand the range of resources subject to the trial court's power of division, and did not intend that property should be given a narrow construction." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, supra, 247 Conn. 365. We also have concluded, however, "that our broad definition of property [is] not entirely without limitation . . . ." Id., 365–66.

Accordingly, in *Smith* v. *Smith*, supra, 249 Conn. 272, we held that the trial court improperly retained continuing jurisdiction in anticipation of dividing the plaintiff's expected interest in a family trust, if and when the plaintiff ever obtained such an interest. Our conclusion was based, in part, "on the fact that the marital estate divisible pursuant to § 46b-81 refers to interests already acquired, not to expected or unvested interests, or to interests that the court has not quantified." Id., 274. "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution.

---

[2] The majority claims that it has not overruled prior cases, but, "instead, [has] built upon their foundation" in deciding that unvested pension benefits are property subject to equitable distribution pursuant to § 46b-81. In my opinion, the cornerstone of that foundation has been the principle that only presently enforceable interests qualify as property subject to equitable distribution under § 46b-81.

. . . [A]n attempt to divide *expected* property is outside the scope of the statutes because it does not divide the property that the [parties] possessed during their marriage." (Citations omitted; emphasis in original.) Id., 275.

Similarly, in *Simmons* v. *Simmons*, supra, 244 Conn. 158, we concluded that a medical degree is not property subject to equitable distribution under § 46b-81 because it "entails no presently existing, enforceable right to receive any particular income in the future. It represents nothing more than an *opportunity* for the degree holder, through his or her own efforts, in the absence of any contingency that might limit or frustrate those efforts, to earn income in the future." (Emphasis in original.) Id., 167.

Conversely, we held in *Krafick* v. *Krafick*, supra, 234 Conn. 783, that vested pension benefits come within the meaning of the term "property" in § 46b-81 "as the interest in receiving such benefits is contractual in nature"; id., 795; and because they "represent an employee's *right* to receive payment in the future, subject ordinarily to his or her living until the age of retirement." (Emphasis in original.) Id., 797. In so concluding, we noted that the classification of "vested pension benefits as property does not run afoul of the limitation, recognized in the context of inheritance and trust interests, that § 46b-81 applies only to presently existing property interests, not mere expectancies. . . . [T]he defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence. . . . The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

Likewise, in *Bornemann* v. *Bornemann*, supra, 245 Conn. 517–18, we concluded that vested yet unmatured

stock options[3] were property under § 46b-81 because they created an enforceable right in the holder. "Generally speaking, much like the right of a pension beneficiary to collect a pension once the particular conditions under which the pension was offered have been satisfied . . . the holder of a stock option possesses the right to accept, under certain conditions and within a prescribed time period, the employer's offer to sell its stock at a predetermined price. . . . Should the employer attempt to withdraw the offer, the employee has a [cause of] action in contract against the employer." (Citation omitted; internal quotation marks omitted.) Id., 517.

The majority misconstrues the reasoning underlying our relevant case law.[4] As the foregoing cases clearly indicate, only those interests in which a party has a presently existing, enforceable right may be classified as property subject to equitable distribution pursuant to § 46b-81. Therefore, I respectfully disagree with the

[3] In *Bornemann* v. *Bornemann*, supra, 245 Conn. 514, the court used the term "unvested" to characterize the stock options at issue in that case. In my view, however, those stock options were vested inasmuch as the defendant had an enforceable contractual right to them at the time of dissolution. Id., 518.

[4] Although the majority states that its "conclusion that the defendant's unvested pension benefits are not a mere expectancy is consistent with the nature of retirement benefits . . . and the fact that employers and employees treat retirement benefits as property in the workplace," we previously have rejected that rationale as a justification for classifying an expectancy as property under § 46b-81. In *Simmons* v. *Simmons,* supra, 244 Conn. 158, the defendant argued "that a medical degree is substantially similar to pension benefits because both are a means to obtain deferred compensation. In both circumstances . . . the marital unit forgoes current income and invests those resources to acquire the benefit of future income." Id., 166. In concluding that a medical degree is a mere expectancy, we stated that "it is not the pension's character as deferred compensation that makes it property subject to equitable distribution pursuant to § 46b-81, but the presently existing, enforceable contract right to receive the benefits that does so." Id., 167.

majority's analysis of the cases on which its holding is premised.[5]

## III

The majority correctly recognizes the three part analysis that a trial court must employ when effecting the

[5] In footnote 8 of its opinion, the majority states that its "conclusion is also consistent with the majority of other appellate courts that have addressed this issue." This statement is misleading upon a closer review of the cases to which the majority cites. For example, in *Jackson v. Jackson*, 656 So. 2d 875 (Ala. Civ. App. 1995), the Alabama Court of Civil Appeals extended the rule in *Ex parte Vaughn*, 634 So. 2d 533 (Ala. 1993), in which the Alabama Supreme Court held that vested military retirement benefits were property subject to equitable division, to cover unvested military retirement benefits. *Jackson v. Jackson*, supra, 877. In *Ex parte Vaughn*, however, the Alabama Supreme Court held that "disposable military retirement benefits, as defined by 10 U.S.C. § 1408 (a) (4) [Sup. II 1990], accumulated during the course of the marriage constitute marital property and, therefore, are subject to equitable division . . . ." *Ex parte Vaughn*, supra, 536. Title 10 of the United States Code, § 1408 (a) (4) defines "disposable retired pay" as "the total monthly retired pay to which a member is *entitled* . . . ." (Emphasis added; internal quotation marks omitted.) *Ex parte Vaughn*, supra, 535, quoting 10 U.S.C. § 1408 (a) (4) (Sup. II 1990). The decision in *Jackson*, which was released on March 3, 1995, was not appealed to the Alabama Supreme Court. Later that year, the Alabama legislature amended Ala. Code § 30-2-51 to authorize a judge to include in the estate of either spouse only those current or future retirement benefits in which the spouse has a *vested* interest. See 1995 Ala. Acts 95-549, § 1 (effective January 1, 1996). Accordingly, the statute now provides in relevant part: "The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed . . . ." Ala. Code § 30-2-51 (b) (1998). The West Virginia case to which the majority cites involves vested as opposed to unvested benefits. See *Butcher v. Butcher*, 178 W. Va. 33, 40 n.15, 357 S.E.2d 226 (1987). Although the New York Court of Appeals has determined that unvested pension benefits are property for purposes of equitable distribution; *Burns v. Burns*, 84 N.Y.2d 369, 376, 643 N.E.2d 80, 618 N.Y.S.2d 761 (1994); it also has determined that medical degrees are property; *O'Brien v. O'Brien*, 66 N.Y.2d 576, 580–81, 584, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985); which is contrary to our decision in *Simmons v. Simmons*, supra, 244 Conn. 158. The value of the remaining cases is diminished further by the variety of theories posited and the different distribution methods employed in those cases. Some states permit immediate distribution, while others prohibit it, and, like the majority, still others conclude that both immediate and deferred

distribution of property upon dissolution. First, the trial court determines whether the interest, benefit or resource is property subject to equitable distribution. If the trial court determines that an interest is property subject to equitable distribution, the trial court then determines whether the interest reasonably could be valued and, if so, what is the most appropriate method of valuation. Finally, the trial court considers how best to distribute the property equitably. See, e.g., *Lopiano* v. *Lopiano*, supra, 247 Conn. 364. Heretofore, if the interest was property under § 46b-81, but its value was speculative, it was not subject to distribution. *Eslami* v. *Eslami*, 218 Conn. 801, 807, 591 A.2d 411 (1991). If the interest was not a presently existing interest, then it was not property and could not be distributed. E.g., *Rubin* v. *Rubin*, supra, 204 Conn. 232.

In the present case, the majority collapses the classification stage of the analysis into the valuation stage, concluding that, if an expectation can be valued, then it is not speculative but, rather, is transformed into property subject to equitable distribution. Notwithstanding the majority's conclusion, the speculative test is relevant to the second stage of the analysis, not to the first as the majority would have us believe. The case law informs us that, if an interest is merely an expectancy, it is not property subject to equitable distribution pursuant to § 46b-81. E.g., id. Thus, I disagree with the majority's conclusion that our case law "reflect[s] a common theme, namely, that in determining whether a certain interest is property subject to equitable distribution under § 46b-81, we look to whether a party's expectation of a benefit attached to

distribution methods are available. See A. Rutkin & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice (1999) § 26.1, p. 470 ("[t]he . . . differences between Connecticut's equitable distribution provision and the statutes in effect in many other jurisdictions mean that some caution must be used in applying to Connecticut situations cases which were decided in other jurisdictions or works discussing property distributions generally").

that interest [is] too speculative to constitute divisible marital property."[6]

The majority's new test also muddles the already murky waters through which the trial court must wade in distributing marital assets pursuant to § 46b-81. This is no more apparent than in the context of trust and inheritance interests.[7]

Pursuant to our established test for determining property, this court previously has rejected "the position that . . . a contingent award of *expected* property . . . can be upheld as a property transfer authorized by § 46b-81." (Emphasis in original.) *Rubin* v. *Rubin*, supra, 204 Conn. 230; see also *Smith* v. *Smith*, supra,

---

[6] The majority incorrectly paraphrases the language from the cases to which it cites. For example, in *Simmons* v. *Simmons*, supra, 244 Conn. 158, the court uses the word "speculative" only in the context of the issue of valuation; id., 183 n.14; and not the issue of whether the resource, a medical degree, was property subject to equitable distribution. In *Simmons*, the court noted that, in *Drapek* v. *Drapek*, 399 Mass. 240, 503 N.E.2d 946 (1987), a Massachusetts case addressing whether a medical degree is property subject to equitable distribution; id., 243–44; the Massachusetts "court initially concluded that the degree was not property subject to equitable distribution because it represent[ed] future earned income, the value of which [was] too *speculative* and subject to too many variables." (Emphasis added.) *Simmons* v. *Simmons*, supra, 183 n.14, citing *Drapek* v. *Drapek*, supra, 244. *Simmons* stands for the proposition that "[w]hether the interest of a party to a dissolution is subject to distribution pursuant to § 46b-81, depends on whether that interest is: (1) a presently existing property interest or (2) a mere expectancy. . . . [Section] 46b-81 applies only to presently existing property interests, not mere expectancies." (Citation omitted; internal quotation marks omitted.) *Simmons* v. *Simmons*, supra, 165.

[7] I reject the majority's contention that the uncertainties surrounding the vesting of pension benefits are not in the same speculative category as those surrounding a potential inheritance. As with "the unquantifiable aspects of human nature which often cause wills to be revised"; *Thompson* v. *Thompson*, supra, 183 Conn. 101; the vagaries of the employment market affect the vesting of a party's pension benefits, especially in fiscally difficult times when public and private employers tighten their belts and reduce their respective workforces. In each situation, the holder of the expectancy is without control of the "unquantifiable aspects"; id.; surrounding vesting. The vesting of pension benefits also is affected in fiscally flush times when employees change jobs to seek out better opportunities.

249 Conn. 274–75. In *Rubin*, the trial court ordered "the plaintiff husband to pay to the defendant wife a share of the assets that he may acquire under his mother's will and on termination of a revocable inter vivos trust created by her."[8] *Rubin* v. *Rubin*, supra, 225. In *Rubin*, we reiterated that "[t]he terms 'estate' and 'property,' as used in the statute, connote presently existing interests. 'Property' entails 'interests that a person has already acquired in specific benefits.' " Id., 230–31. We then concluded that simply because "the plaintiff [was required to] pay the defendant a one third share of the assets [that] he may acquire under his mother's will and on termination of her inter vivos trust only if and when this acquisition materialize[d] [did] not transmute such expected assets into 'property' of the plaintiff." Id., 232. In *Eslami* v. *Eslami*, supra, 218 Conn. 801, we acknowledged that the plaintiff wife's vested interest in her father's estate[9] was property subject to equitable distribution under § 46b-81; id., 806; but nonetheless concluded that her financial interest was not subject to equitable distribution because an unresolved will contest prevented its value from being ascertained with certainty. Id.

The distinction between those two cases lies in how we classified the parties' respective interests according to whether the parties had held presently enforceable interests in them. In *Rubin*, the husband had a mere expectancy in the trust and his mother's estate because they were not vested. See *Rubin* v. *Rubin*, supra, 204

---

[8] The plaintiff in *Rubin* was the residuary beneficiary of a revocable inter vivos trust consisting of $225,000 in securities, from which he periodically had received funds during the marriage, and was one of "two equal residuary legatees under [a] will executed by his mother, whose assets at the time of . . . dissolution were approximately $725,000." *Rubin* v. *Rubin*, supra, 204 Conn. 227.

[9] In *Eslami*, the plaintiff's father had died approximately two and one-half years before the parties' dissolution proceedings. *Eslami* v. *Eslami*, supra, 218 Conn. 806.

Conn. 230–32. In *Eslami*, the wife possessed an enforceable right in her father's estate because it was vested. *Eslami* v. *Eslami*, supra, 218 Conn. 806. The majority's test negates this distinction. Under the new test for determining property subject to equitable distribution pursuant to § 46b-81, not only will a vested inheritance be considered property, but so will those expected inheritances that are not so speculative as to preclude their valuation.[10]

Had the court in *Rubin* analyzed the plaintiff's expected inheritance and trust interests according to the majority's test, it would have had to conclude that such interests were property available for distribution pursuant to § 46b-81. First, the evidence in *Rubin* demonstrated not only that the sixty-two year old plaintiff was a residuary beneficiary of a revocable inter vivos trust established by his mother, but, also, that he had been receiving funds from that trust during the marriage. *Rubin* v. *Rubin*, supra, 204 Conn. 227. Surely, this is strong evidence tending to support the certainty of the plaintiff's expectancy in the trust interest. Additionally, the uncertainty surrounding the vesting of the plaintiff's residuary interests in both the trust and his mother's estate could not defeat their classification as property under the majority's test because such uncertainties would be addressed in the valuation and distribution stages. As the foregoing cases demonstrate, application of the majority's new test for determining property always will hinge on the degree of speculation associated with the expectancy. Such a test is unworkable and contrary to our established case law.

---

[10] Although the majority informs us of this new test, it does not explain the degree of certainty that an expectancy must possess in order to qualify as property subject to equitable distribution. In other words, the majority does not provide the trial courts of this state with any real guidance in deciding how speculative is too speculative for purposes of determining whether an expectancy is property subject to equitable distribution under § 46b-81.

IV

The majority's inverted logic leads to the necessary conclusion in part II of its opinion concerning the distribution of the unvested pension. The majority correctly rejects the reserved jurisdiction method of distribution. The majority's conclusion that unvested pensions are property, however, compels the majority to accept both the present value method—also known as the immediate offset method—and the present division method of deferred distribution as appropriate methods for distributing unvested pensions.[11] The majority recognizes the major weakness of the immediate offset method, namely, that the employee spouse exclusively shoulders the risk that the unvested pension may never vest and may never become an enforceable interest while the nonemployee spouse receives existing property at the time of dissolution. See B. Turner, Equitable Distribution of Property (2d Ed. 1994) § 6.09, p. 331 ("Relatively few persons die before receiving their vested pension benefits, but it is not at all uncommon for employees to move from one employer to another. Thus, there is a very real risk that the holder of an unvested pension will not actually receive any benefits."). The majority nonetheless concludes that the immediate offset method is acceptable because it severs the parties' economic ties and avoids postdissolution court supervision. Had the majority applied the test that we previously had employed in determining what constitutes property under § 46b-81, that is, whether the interest is a presently existing interest, such potentially inequitable results would not occur. They could not occur because only interests that qualify as "property" may be distributed at the time of dissolution. The potential results of the immediate offset method are contrary

---

[11] The majority does not reject any other method of distribution that might be available other than the reserved jurisdiction method.

to the equitable nature of Connecticut's property distribution scheme.

Additionally, inasmuch as the majority concludes that the unvested pension benefits are property subject to equitable distribution, it allows for "deferred distribution, delaying distribution . . . ." Under the deferred distribution method, the trial court orders a contingent award of expected property,[12] a result that we previously had rejected in *Rubin*. See *Rubin* v. *Rubin*, supra, 204 Conn. 232. Although *Rubin* involved an expected inheritance, our conclusion in that case is no less applicable in the context of unvested pensions.[13] See *Simmons* v. *Simmons*, supra, 244 Conn. 167 ("it is not the pension's character as deferred compensation that makes it property subject to equitable distribution pursuant to § 46b-81, but the presently existing, enforceable contract right to receive the benefits that does so").

V

In concluding that unvested pension benefits are not property subject to equitable distribution under § 46b-81, I do not mean to suggest that they are irrelevant to a fair financial arrangement between the parties. Rather, as subsection (c) of § 46b-81 provides, in fashioning an equitable division of property, the trial court shall consider the parties' respective opportunities for

---

[12] In the present case, the trial court issued the following contingent award: "[U]ntil such time, if any, as [the] defendant's right to receive retirement benefits from the city of Meriden [city] vests, [the] plaintiff shall be the beneficiary of, and be entitled to receive, the refundable contributions, with accrued interest or yield thereon, if any, made by or on behalf of [the] defendant if such contributions, etc., shall ever become payable by the city . . . . And there is hereby entered a Qualified Domestic Relations Order assigning to [the] plaintiff one half of the disability and/or retirement benefits earned by [the defendant] from his employment by the city . . . for his labors for said city through the date of this decree. (The court is aware that [the] defendant's right to receive retirement benefits has not yet vested.)"

[13] See footnote 7 of this dissenting opinion.

acquiring capital assets and income in the future. In *Thompson* v. *Thompson*, supra, 183 Conn. 100–101, we rejected the plaintiff's argument that the trial court improperly *considered* unaccrued[14] pension benefits in making financial and property distribution orders because those benefits were too uncertain and speculative for valuation purposes. We reasoned that "[p]ension benefits represent a form of deferred compensation for services rendered. . . . As such they are conceptually similar to wages. General Statutes §§ 46b-81 (c) and 46b-82 both require the trial court to consider, inter alia, the occupation and the amount and sources of income of each of the parties when ordering property assignments and alimony. Just as current and future wages are properly taken into account under these statutes, so may unaccrued pension benefits, a source of future income, be considered." (Citation omitted.) *Thompson* v. *Thompson*, supra, 100.

Additionally, the trial court could consider the pension benefits, upon vesting and in payment status, as a changed circumstance warranting a modification in alimony awarded to the nonemployee, former spouse under General Statutes § 46b-86.[15] See *Smith* v. *Smith*, supra, 249 Conn. 273 (§ 46b-86 confers authority on trial courts to modify final orders of periodic alimony). As

---

[14] I note that the terms "unaccrued" and "vested" are not synonymous. As the court in *Thompson* explained, "unaccrued pension benefits [are] those benefits which will accrue in the future if the employee continues to work for the employer. . . . Vested benefits on the other hand, refer to those accrued benefits to which the employee has a nonforfeitable right to receive at retirement age whether or not he is in the service of the employer at that time." (Citations omitted.) *Thompson* v. *Thompson*, supra, 183 Conn. 100 n.3.

[15] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by [the] court upon a showing of a substantial change in the circumstances of either party . . . ."

this court acknowledged in *Eslami*, "[t]he plaintiff's interest in her father's estate . . . [was] not wholly irrelevant to a fair financial arrangement between the parties. When periodic alimony has been ordered, a substantial change in the financial need or ability of a party provides a basis for modification of such an award, unless such a change was contemplated at the time of . . . dissolution. General Statutes § 46b-86. In *Rubin* we concluded that the increase in the husband's financial ability that would occur upon his mother's death would constitute a change of circumstances ordinarily warranting an increase in the weekly alimony payment . . . . *Rubin* v. *Rubin*, supra, [204 Conn.] 236." (Internal quotation marks omitted.) *Eslami* v. *Eslami*, supra, 218 Conn. 807. Similarly, in the present case, when the value of the pension has been established and is in payment status, "there would be a basis for adjusting the alimony order, unless other circumstances relevant to financial ability or need may have intervened. Any prediction of what justice between the parties may require when a future event may occur is likely to be less well considered than a determination made after the event, when speculation as to the circumstances involved has been supplanted by actuality." (Internal quotation marks omitted.) Id., 807–808.

In conclusion, although unvested pension benefits should not be classified as property subject to equitable distribution, § 46b-81 (c) requires the trial court to *consider* them in fashioning property distribution orders at the time of dissolution. When a pension benefit becomes vested and is in payment status, the trial court may treat this situation as a changed circumstance warranting a modification of an award of periodic alimony under § 46b-86. This approach remains faithful to the case law, the language of the relevant statutes and the legislative intent to expand the resources available for equitable distribution.

The majority fundamentally changes the meaning of the term "property" in § 46b-81. Because I believe that the majority's new approach to classifying property subject to equitable distribution is contrary to the language and intent of § 46b-81 and case law governing the classification of property under § 46b-81, I respectfully dissent.