CYNTHIA M. HANSEN *v.* GLENN T. HANSEN
(AC 23601)

Dranginis, Bishop and West, Js.

Argued October 27—officially released December 23, 2003

*Bruce A. Chamberlain*, for the appellant (defendant).

*Howard M. Gould*, with whom, on the brief, were *Patricia J. Gillin* and *Ann Grunbeck Monaghan*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Glenn T. Hansen, appeals from the judgment of the trial court finding him in contempt for his refusal to accede to a proposed qualified domestic relations order (QDRO) prepared by counsel for the plaintiff to effectuate the terms of the parties' marital dissolution judgment. We affirm the judgment of the trial court.

When the parties' marriage of twenty years was dissolved on November 9, 1989, the judgment was based on the parties' agreement. It included a provision that "[the] plaintiff shall receive one half of the defendant's

retirement benefits, when and as available from the state of Connecticut." At the time of the dissolution, the defendant was employed as a teacher by the state of Connecticut and was a participant in the state employees retirement system. On May 28, 2002, the defendant, apparently contemplating retirement, filed a motion to clarify the portion of the judgment regarding the division of his retirement benefits. During oral argument on his motion, the defendant claimed that his intention when he made that agreement was that the plaintiff would receive only one half of the pension benefits that had accrued during the marriage and that she would not participate in any postdissolution aggregations to his pension entitlement. The court orally denied the defendant's motion. The defendant sought no articulation of the court's denial of his motion to clarify. Subsequently, the parties prepared conflicting QDROs and submitted them to each other for approval. Although neither party has included in the record a copy of his or her proposed QDRO, it is a reasonable inference from the transcripts of the hearings on the motion to clarify and the motion for contempt, which are part of the record, that the defendant's proposed QDRO purports to provide the plaintiff with a monthly pension amount determined by a formula taking into account his total number of years as a participant in the state employees retirement system and the number of those years during which he and the plaintiff were married. It is equally apparent that the QDRO prepared by the plaintiff provides for an equal division of the defendant's monthly retirement benefit when it actually becomes available to him, i.e., upon his retirement. When each party refused to agree to the terms of the QDRO submitted by the other, the parties filed competing motions for contempt.[1] At oral argument, the court

[1] We note that the defendant does not raise as an issue on appeal that his failure to accede to the QDRO prepared by the plaintiff's counsel was based on an honest disagreement and was therefore not a wilful violation of a court order. Under the unique circumstances of this case and given the

found in favor of the plaintiff and disagreed with the defendant's claim that the language of the agreement was sufficiently ambiguous to require a hearing to determine the intent of the parties when the agreement was formulated. This appeal followed.

The defendant raises two issues on appeal. First, he claims that it was improper for the court to rule on the contempt motion without having first obtained a clarification of the agreement or without hearing testimony from the parties regarding their intent when they entered into the agreement in 1989. Second, the defendant claims that, as a matter of law, pension benefits are valued as of the date of dissolution of the marriage in the absence of a specific statement to the contrary. Neither claim is persuasive.

At the contempt hearing, the court accurately observed that the defendant already had filed a motion for clarification that had been denied. Additionally, we note that the defendant did not subsequently file a motion for articulation of the court's denial of his motion. Under those circumstances, his attempt to argue his motion for clarification further was seen correctly by the court as an effort to reargue an already decided motion. Additionally, we are not persuaded that the language in the agreement providing for the plaintiff to receive "one half of the defendant's retirement benefits, when and as available from the state of Connecticut" is ambiguous. To the contrary, simple language construction directs the conclusion that the agreement provides for the plaintiff to receive one half of the defendant's monthly pension benefit from the state of Connecticut at such time as he retires because the payment of retirement benefits are, in fact, not

---

fact that the court did not impose any sanctions on the defendant except to order that he accede to the QDRO prepared by the plaintiff's counsel, we do not reach the issue of wilfulness.

available until one retires. In short, the phrase "when and as available" is susceptible to only one meaning. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . . When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Citation omitted; internal quotation marks omitted.) *Gager* v. *Gager & Peterson, LLP*, 76 Conn. App. 552, 556–57, 820 A.2d 1063 (2003). The court did not abuse its discretion in refusing to hear evidence of the parties' intention in formulating that portion of their marital dissolution agreement.

The defendant's second claim that pension benefits are valued as of the date of dissolution states a proposition not directly germane to our review on appeal. Although the defendant has asserted correctly the rule that assets are, as a general matter, to be valued as of the date of dissolution, that proposition does not preclude the court from awarding to a spouse a portion of retirement benefits earned by his or her former spouse subsequent to the date of dissolution. Cf. *Bender* v. *Bender* 258 Conn. 733, 785 A.2d 197 (2001).

The judgment is affirmed.[2]

---

[2] We note that although both parties submitted proposed QDROs as the vehicle to enforce the retirement portion of the judgment, a QDRO is not the appropriate means to do so with respect to a government pension. "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. See 29 U.S.C. § 1056 (d) (3) (b) for the requirements of a valid QDRO. . . . [T]he procedures set forth in the United States Code for a QDRO do not apply to a governmental pension plan . . . see 29 U.S.C. § 1003 (b) . . . ." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 786–87 n.4, 663 A.2d 365 (1995). Because neither of the parties has claimed any impropriety with respect to the vehicle each proposed, and because the

issue at hand concerns the extent of the plaintiff's interest in the defendant's
retirement benefit and not the means to secure that interest, we need do
no more than note the mischaracterization. See *Bender* v. *Bender,* supra,
258 Conn. 738 n.3.