VANESSA RANFONE *v.* ROBERT RANFONE
(AC 27317)

Flynn, C. J., and McLachlan and Peters, Js.

Argued March 21—officially released August 14, 2007

Frank J. Kolb, Jr., with whom, on the brief, was Joseph A. Marotti, for the appellant (defendant).

Joshua D. Lanning, with whom, on the brief, was Howard A. Jacobs, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. In this marital dissolution case, the defendant, Robert Ranfone, appeals from the judgment of the trial court awarding the plaintiff, Vanessa Ranfone, 50 percent of the defendant's pension benefits as of the date he is eligible to collect them. On appeal, the defendant claims that the court improperly awarded the plaintiff a 50 percent interest in his pension benefits, inclusive of all future contributions made after the date of dissolution.[1] He also claims that the court improperly failed to assign a value to the pension. We affirm the judgment of the trial court.

The parties were married on April 22, 1986, in Muscogee County, Georgia, and have one child, born May 27, 1988, who is issue of the marriage. The marriage of the parties broke down irretrievably, and the court rendered judgment dissolving their marriage on May 9, 2005. The parties were awarded joint legal custody of their child, with primary physical custody awarded to

---

[1] In his reply brief, the defendant takes a completely different position and raises a new argument, which we decline to address. See *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005) ("[c]laims . . . are unreviewable when raised for the first time in a reply brief"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

the plaintiff. The defendant was ordered to pay child support and a percentage of qualifying child care expenses and to maintain health insurance on behalf of the child. The defendant also was ordered to pay alimony in the amount of $350 per week and the plaintiff's health insurance through COBRA; Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-68; for thirty-six months and to maintain life insurance in the amount of $250,000, naming the plaintiff as the beneficiary so long as he is obligated to pay alimony. Each party was awarded the property, assets and debts listed on their respective financial affidavits, with the following exceptions: the plaintiff was awarded the marital home, and the defendant was ordered to deliver to her a quitclaim deed within thirty days, in exchange for the plaintiff delivering to the defendant a mortgage note in the amount of $110,000 plus 5 percent annual interest, due and payable two years after their child reaches age nineteen or graduates from high school, whichever occurs first. The plaintiff also was awarded a 50 percent interest in the net proceeds of any causes in action received by the defendant. Additionally, the court awarded the plaintiff "50 percent of the value of the [defendant's] pension with the Connecticut Municipal Employees Retirement System, valued and payable to her as of the date that he first becomes eligible to begin collecting his share of the pension. . . . All other deferred compensation is awarded to the party listing such on [his or her] financial affidavit." After various motions to reargue and to articulate, this appeal was filed.

On appeal, the defendant claims that the court improperly awarded the plaintiff 50 percent of his pension benefits as of the date he becomes eligible to collect them, including future contributions that might be made long after the judgment of dissolution. The defendant takes no issue with the court's authority to divide

the pension benefits but argues that such division can include contributions made only to the date of dissolution. We are not persuaded.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 280 Conn. 764, 774–75, 911 A.2d 1077 (2007).

"The distribution of assets in a dissolution action is governed by [General Statutes] § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme."

(Citation omitted; internal quotation marks omitted.) *Czarzasty* v. *Czarzasty*, 101 Conn. App. 583, 588–89, 922 A.2d 272 (2007).

The defendant argues that assets earned after the date of the dissolution are not marital property and that the court must value the parties' property as of the date of dissolution. The defendant cites *Bornemann* v. *Bornemann*, 245 Conn. 508, 752 A.2d 978 (1998), in which our Supreme Court agreed with the trial court that certain nonvested stock options could be considered marital property. Id., 518–20. The defendant argues that our Supreme Court explained in *Bornemann* that assets must be earned during the marriage to be considered marital property. See id. He argues that our Supreme Court instructed that in valuing nonvested stock options, such a determination "is made by considering the purpose of the award, that is, whether the options constitute compensation for past or [for] future services. . . . [S]tock options that are earned prior to the date of dissolution, but that constitute compensation for future services, are not considered to be earned during the marriage and, therefore, are not subject to distribution as marital property . . . ." (Citations omitted.) See id., 520–23.

The defendant also argues that the trial court relied on a per curiam decision by this court, *Hansen* v. *Hansen*, 80 Conn. App. 609, 836 A.2d 1228 (2003), in making the pension award but misconstrued its holding and relevance to the case at hand. In *Hansen*, the parties voluntarily had entered into a settlement agreement that provided in relevant part: "[The] plaintiff shall receive one-half of the defendant's retirement benefits, when and as available from the state of Connecticut." (Internal quotation marks omitted.) Id., 610. The defendant argues that the court upheld only the plain language of the parties' agreement; see id., 611; and that the present case is distinguishable for many reasons,

not the least of which is that the parties here had no agreement. The defendant does acknowledge the broad language used in *Hansen* in which, citing *Bender* v. *Bender*, 258 Conn. 733, 785 A.2d 197 (2001), we stated: "The defendant's second claim that pension benefits are valued as of the date of dissolution states a proposition not directly germane to our review on appeal. Although the defendant has asserted correctly the rule that assets are, as a general matter, to be valued as of the date of dissolution, that proposition does not preclude the court from awarding to a spouse a portion of retirement benefits earned by his or her former spouse subsequent to the date of dissolution." *Hansen* v. *Hansen*, supra, 612.

The defendant then attempts to distinguish the present case from *Bender* v. *Bender*, supra, 258 Conn. 733, a case in which our Supreme Court upheld the award of an unvested pension as part of a marital dissolution property award. In *Bender*, the defendant husband had been employed as a firefighter for nineteen years, and his pension was not set to vest until he reached twenty-five years of employment. The trial court awarded the plaintiff wife 50 percent of the unvested pension benefits earned by the defendant husband through the date of the dissolution, which she would get provided the pension vested in the future. On appeal, the defendant had argued that the unvested pension benefits were too speculative to be considered property. Id., 749. The Supreme Court disagreed, however, holding that the "fact that a portion of the pension benefits, once vested, will represent the defendant's service to the fire department after the dissolution does not prelude us from classifying the entire unvested pension as marital property." Id., 752.

The defendant here argues that *Bender* is distinguishable because the trial court's order in that case concerned benefits earned *only through the date of*

*dissolution,* and the court did not award to the wife any portion of any future contributions; all contributions made after the date of dissolution belonged to the husband. The defendant argues that the court in this case, apparently using the present division method of deferred distribution,[2] should have determined the pension value and the share to which the plaintiff was entitled as of the date of dissolution, with the plaintiff receiving no benefits from the future contributions made by the defendant or his employer, as was done in *Bender.* He argues that the trial court, here, went far beyond what was authorized by our Supreme Court in *Bender* or by our legislature. Although the defendant agrees that his pension properly is considered an asset

---

[2] The Supreme Court in *Bender* v. *Bender,* supra, 258 Conn. 733, explained some of the methods for valuing pension benefits for equitable distribution purposes: "There are three general approaches to address the problems of valuation and distribution of pension benefits: (1) the present value method, also called the immediate offset method; (2) the present division method of deferred distribution; and (3) the reserved jurisdiction method of deferred distribution." Id., 754.

"[T]he present value or immediate offset approach requires the court to determine the present value of the pension benefits, decide the portion to which the nonemployee spouse is entitled, and award other property to the nonemployee spouse as an offset to the pension benefits to which he or she is otherwise entitled." (Internal quotation marks omitted.) Id., 754–55.

"Under the present division method, the trial court determines at the time of trial, the percentage share of the pension benefits to which the nonemployee spouse is entitled. . . . In other words, the court will declare that, upon maturity, a fixed percentage of the pension be distributed to each spouse." (Internal quotation marks omitted.) Id., 758.

"Alternatively, under the reserved jurisdiction method, [a variant of the present division method of deferred distribution] the trial court reserves jurisdiction to distribute the pension until benefits have matured. Once matured, the trial court will determine the proper share to which each party is entitled and divide the benefits accordingly." (Internal quotation marks omitted.) Id.

The court, then, expressly rejected the reserved jurisdiction method, explaining: "On its face, the statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate." (Internal quotation marks omitted.) Id., 761. Nevertheless, these methods of valuation and distribution are not exclusive or exhaustive. Id.

of the marriage, subject to equitable distribution, he argues that the contributions made to that pension after the date of dissolution "do not represent an asset that was earned during the marriage and, therefore, cannot be subject to equitable distribution. . . . The future postjudgment contributions to the [d]efendant's pension are the sole property of the [d]efendant, and no legal [precedent] is on point to the contrary." (Citation omitted.) We are not persuaded by the defendant's arguments and distinctions.

Our resolution of the defendant's claim is guided by *Bender* v. *Bender*, supra, 258 Conn. 733. Although not precisely on point, the language and analysis of that case directs our decision here. The primary difference between *Bender* and the present case is that in *Bender*, the trial court's distribution of nonvested pension benefits specifically was as of the date of dissolution, and the issue on appeal was whether an unvested pension was too speculative to be considered property. In the present case, the issue does not concern speculation but, rather, whether future contributions to a pension, made after the date of dissolution by the employee, the employer or both can be considered property subject to equitable distribution as part of the marital estate.

In an earlier case, *Krafick* v. *Krafick*, 234 Conn. 783, 798, 663 A.2d 365 (1995), the Supreme Court had concluded that vested pension benefits constituted property subject to equitable distribution pursuant to § 46b-81. In doing so, the Supreme Court emphasized that, consistent with the purpose of § 46b-81, a broad construction of the term 'property' was necessary. See id., 795. The court explained that the purpose of § 46b-81 was "to recognize that marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—

the fruits of which are distributable at divorce." (Internal quotation marks omitted.) Id. Despite this broad construction, the court also recognized that the definition of "property," as used in § 46b-81, was not without limitations in that it did not apply to mere expectancies. See id., 797. The court then determined that the contingencies to which the vested pension benefits were subject did not render them a mere expectancy because the holder of the benefits, by way of an enforceable contract right, had a presently existing interest. Id., 797–98.

In *Bender* v. *Bender*, supra, 258 Conn. 745–46, the Supreme Court explained that "the theme running through" our case law interpreting what properly may be considered marital property pursuant to § 46b-81 "pays mindful consideration to the equitable purpose of our statutory distribution scheme, rather than to mechanically applied rules of property law. In order to achieve justice, equity looks to substance, and not to mere form." The court further explained that "retirement benefits, whether vested or unvested, are significant marital assets, and may be . . . the only significant marital asset. To consider . . . pension benefits a nondivisible marital asset would be to blink [the court's] eyes at reality." Id., 752. The Supreme Court also recognized that "adherence to that theme has outweighed [its] adherence to strict contract or property principles in determining whether a certain interest constitute[d] property for purposes of equitable distribution. Traditional property principles, although relevant; see, e.g., *Krafick* v. *Krafick*, supra, 234 Conn. 794–95; are not determinative of whether an interest constitutes property under § 46b-81." *Bender* v. *Bender*, supra, 748.

Although noting in *Bender* that "as a practical matter, by awarding the plaintiff 'one half of the disability and/ or retirement benefits earned by [the defendant] from his employment by the city of Meriden for his labors

for said city *through the date of [the dissolution] decree'*
. . . the trial court recognized that a portion of the
pension plan would be earned after the dissolution'';
(emphasis in original) id., 752 n.9; the Supreme Court
rejected the defendant husband's argument that "the
portion of his pension benefits that 'would result from
[his] future labors' is not subject to equitable distribu-
tion, and that the only portion subject to equitable distri-
bution is the amount of the contributions in the fund
at the time of dissolution." Id., 752. The Supreme Court
explained: "The fact that a portion of the pension bene-
fits, once vested, will represent the defendant's service
to the fire department after the dissolution does not
preclude us from classifying the entire unvested pen-
sion as marital property. See *Lopiano* v. *Lopiano*, [247
Conn. 356, 367 n.5, 752 A.2d 1000 (1998)] ('although
some portion of the personal injury award in the present
case represents lost future wages, and, for that matter,
future pain and suffering, that fact does not preclude
this court from characterizing the award, in its entirety,
as marital property')." *Bender* v. *Bender*, supra, 258
Conn. 752. In the present case, the court classified and
valued the entirety of the defendant's pension as a mari-
tal asset subject to equitable distribution. On the basis
of the broad language contained in *Bender*, we cannot
conclude that such classification was improper.

The defendant also claims that the court improperly
failed to value the pension as of the date of dissolution,
instead specifically ordering that it be "valued and pay-
able to [the plaintiff] as of the date that [the defendant]
first becomes eligible to begin collecting his share of
the pension." We do not agree.

"As a general framework, [t]here are three stages of
analysis regarding the equitable distribution of each
resource: first, whether the resource is property within
§ 46b-81 to be equitably distributed (classification); sec-
ond, what is the appropriate method for determining

the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) *Bender* v. *Bender,* supra, 258 Conn. 740. We already have determined that the court properly classified the defendant's pension as property subject to equitable distribution.

As we explained in footnote 2, there are three generally accepted approaches to the valuation and distribution of pension benefits: (1) the present value method; (2) the present division method of deferred distribution; and (3) the reserved jurisdiction method of deferred distribution, which our Supreme Court expressly has rejected. "[I]t is within the trial court's discretion . . . to choose, on a case-by-case basis, among the present value method, the present division method of deferred distribution, and any other valuation method that it deems appropriate in accordance with Connecticut law that might better address the needs and interests of the parties. . . . The touchstone of valuation, as well as the ultimate distribution of pension benefits, is the court's power to act equitably." (Citation omitted; internal quotation marks omitted.) Id., 760. In this case, there can be no doubt that the court used the present division method of deferred distribution.

When a trial court applies the present division method of deferred distribution, thereby determining the percentage to which the plaintiff is entitled and delaying distribution until the benefits are payable, it is "unnecessary for the trial court to determine the benefits' present value, thereby also making it unnecessary to hear actuarial testimony regarding the value of the pension benefits." Id., 763. As was the case in *Bender,* the trial court in the present case "applied the present division method of deferred distribution, delaying distribution, in accordance with the domestic relations order, until the pension [comes] into pay status." Id. Specifically, the

court here determined, at the time of dissolution, that the plaintiff was entitled to 50 percent of the pension benefits as of the date the defendant becomes eligible to collect them. We conclude that the trial court used a proper method of valuation and distribution.

The judgment is affirmed.

In this opinion the other judges concurred.