KOTTAYAM NATARAJAN *v.* BARBARA NATARAJAN
(AC 28243)

Flynn, C. J., and Beach and Robinson, Js.

Argued February 5—officially released April 29, 2008

*Jodi Zils Gagne*, for the appellant (defendant).

*Steven R. Dembo*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Barbara Natarajan, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Kottayam Natarajan. On appeal, the defendant claims that the court improperly (1) admitted into evidence witness testimony and exhibits that were not disclosed to her prior to trial, and (2) distributed the parties' assets. We disagree and affirm the judgment of the trial court.

The court found the following facts. The plaintiff and the defendant were married on May 3, 1980, in

Glastonbury. They have one adult child from this marriage, and the plaintiff has three children from a previous marriage, all of whom have reached the age of majority. The plaintiff is seventy-three years old and retired after a lengthy career as a college professor. The defendant is fifty-four years old and ceased all employment at the age of forty-nine, when the plaintiff retired from his professorship. She has a master's degree in business administration from the University of Hartford and had passed the chartered property casualty underwriting examination. The plaintiff and the defendant both were responsible for the breakdown of their marriage, which was caused by significant age and cultural differences. Accordingly, the court entered a decree dissolving the marriage.

The court stated that it had considered all of the criteria set forth in General Statutes §§ 46b-62, 46b-81 and 46b-82 and other pertinent statutes, retirement income and earning capacity, causes for the breakdown of the marriage and the consequences of the financial orders set forth. The court ordered that (1) the defendant retain sole ownership of the marital home and of her vehicle, (2) the plaintiff retain sole ownership of his interest in the home located in Pearland, Texas, and of his vehicle, (3) the plaintiff and the defendant transfer assets held for their daughter to her within thirty days of the dissolution, (4) the remaining assets be divided equally with each party receiving equal or near equal ownership interest, (5) the plaintiff and the defendant be responsible for his or her own outstanding debts, loans and mortgages, (6) the plaintiff pay the defendant $200 per month toward the cost of her health insurance for six months following the date of dissolution and determine whether COBRA[1] is available to her through

---

[1] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161–68.

his former employer, (7) the defendant be solely responsible for the purchase of her health insurance after the six month period and (8) the defendant "not contact [the plaintiff], his counsel (including all members of [counsel's] law firm) and expert witnesses for any reason other than to effectuate the orders that [the] court enters as a final judgment." Specifically, the court ordered the defendant to communicate by e-mail only and in a courteous manner. This appeal followed. Additional facts and procedural history will be set forth as necessary.

First, we set forth the legal principles that guide our review of the defendant's claims. "The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008).

I

The defendant first claims that the court improperly admitted into evidence exhibits that were not disclosed to her prior to trial. Specifically, she argues that the plaintiff failed to disclose (1) that Carol Ann Gaetano, an administrative assistant to the defendant's former counsel, would testify at trial and (2) the summary of the parties' assets prepared by Pamela J. Williams, a certified public accountant and fraud examiner. She

further argues that the court's admission of that evidence caused unfair surprise and disadvantaged her as a pro se litigant. After a scrupulous review of the trial transcripts, we conclude that the court did not abuse its discretion in admitting Gaetano's testimony or Williams' summary of the parties' financial records.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. The plaintiff commenced this divorce action on April 5, 2005. The matter was pretried through the family relations division of the Superior Court and through private mediation, and was scheduled for adjudication as an uncontested divorce on January 9 and 10, 2006. At the defendant's request, the matter was continued and rescheduled for March 22 and 24, 2006, then for June 20 and 21, 2006, July 19 and 20, 2006, and finally, July 31, 2006. At the hearing on July 31, 2006, the defendant did not accept one of the terms of the agreement that was put forth before the court. As a result, the court determined that "this [was] the last time this matter [was] going to come before the [c]ourt under either the anticipated agreement or for purposes of negotiation" and ordered that the matter be scheduled for trial. During the hearing, the defendant's counsel, Robert Walsh, notified the court of his intent to move for withdrawal from the case. On August 11, 2006, after a hearing, the court granted Walsh's motion to withdraw. The court then set October 10, 2006, for trial and reminded both parties that there would be no further continuances. The defendant proceeded pro se at trial and did not retain counsel until this appeal.

At the start of the trial on October 10, 2006, the plaintiff and his attorney, Steven R. Dembo, appeared in court, but the defendant did not appear.[2] In response

---

[2] The court noted for the record: "My staff has spent the last fifteen or twenty minutes canvassing the hallways for the defendant . . . to no avail. We have been unable to find her."

to the court's concern that the defendant had not received notice of the trial date, the plaintiff offered the testimony of Gaetano, the administrative assistant to Walsh, to show that the defendant had been notified of the court date. Gaetano testified that the plaintiff had subpoenaed Walsh to testify at the hearing, but because Walsh was on vacation, she would "substitute for him." Gaetano also testified that the defendant had been notified by mail, by e-mail and by telephone of the trial date. At this point, the defendant entered the courtroom and informed the court that she had been "waiting for family relations" and that she wanted to present a settlement agreement.

After the plaintiff informed the court that he had no interest in settlement, Gaetano resumed her testimony. Gaetano's testimony was offered to show that subsequent to his withdrawal, Walsh had transferred to the defendant her entire file, documents and exhibits. The defendant objected to the testimony, stating that she had not been given notice that Gaetano would testify and argued that Gaetano should not be permitted to testify because of the attorney-client privilege. The court assured the defendant that it was "not going to let [Gaetano] testify as to any advice and opinions . . . ." Gaetano's testimony during both direct and cross-examination was that Walsh's office had given the defendant all of the documents in his possession, including all discovery and trial documents provided by the plaintiff's counsel, with the exception of the transcripts from the July 31, 2006 hearing because the defendant had not paid for them.

The plaintiff next presented the testimony of Williams, a certified public accountant and fraud examiner. Williams testified that she had reviewed the parties' financial records, approximately thirty to thirty-five inches thick, from ten or twelve financial institutions.

From these financial records, Williams prepared a comprehensive summary of the parties' assets. The plaintiff offered the summary into evidence under § 10-5 of the Connecticut Code of Evidence.[3] The defendant objected on the ground that she had not seen the document. In response, the plaintiff noted that the defendant had possession of the underlying financial records. The court admitted the document into evidence but ordered the plaintiff to make the summary available to the defendant for two hours in the afternoon to give her an opportunity to compare the summary to the original documents. The plaintiff proceeded with his examination of Williams. When the court adjourned that day at 1 p.m., the following colloquy occurred:

"[The Plaintiff's Counsel]: We're going to stay here from two to four with the documents open—

"The Court: Right.

"[The Plaintiff's Counsel]:—and I'm actually going to have . . . Williams stay here as well to accommodate any questions . . . .

"The Court: Do you understand? So, you'll get extra time this afternoon . . . to look over any background documents, even the ones you've given them. So, it's assumed you know what's in them; and then you can, after that time, go over your potential questions for this witness, and we'll start with your questions to her tomorrow morning."

The trial continued on the morning of October 12, 2006. The defendant began by renewing her objection to Gaetano's testimony. She stated that because she

---

[3] Connecticut Code of Evidence § 10-5 provides: "The contents of voluminous writings, recordings or photographs, otherwise admissible, that cannot be conveniently examined in court, may be admitted in the form of a chart, summary or calculation, provided that the originals or copies are available for examination or copying, or both, by other parties at a reasonable time and place."

was not aware of Gaetano's appearing as a witness, she was unable to offer any evidence that Walsh's office had not given her certain documents. The court noted that the defendant had sufficient time to cross-examine Gaetano the previous day. The court also informed the defendant that Gaetano's testimony was "only for the purpose of letting [the court] know that [the defendant] received the materials back with respect to her firm's prior representation of [her]." When the defendant continued to insist that she was not provided with all the documents, the court concluded: "[I]t's my determination that you had [received all the documents]; that [Gaetano] was credible that you have the documents that you need. I listened to you; I listened to her. I determined she was more believable."

The defendant then informed the court that she was unable to review completely the summary and the underlying financial records in the two hours provided to her the previous day. The defendant stated that she reviewed one and one-half pages in the time allotted. Again, she argued that she had not been provided these documents prior to trial. In response, the plaintiff's counsel again insisted that he had given the defendant all documents and exhibits in preparation for mediation and before each previously scheduled hearing date, that the defendant herself had access to most of the financial records because most of the accounts were held jointly, and that, as Gaetano had testified, before Walsh withdrew as the defendant's attorney, Walsh had given the defendant those documents. After much argument from both parties, the court informed the defendant that it provided her two hours the previous day to review and to compare the summary of the underlying documents to determine which of the information from the summary she had not seen prior to trial. The court further informed the defendant that the time given was not for her to prepare for the trial by examining all of the

underlying documents, which the court had determined that she already had in her possession. The court then stated that there would be no more time given for the defendant to review the exhibits. The defendant then began a lengthy cross-examination of Williams.

As a preliminary matter, we set forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Kelly*, 106 Conn. App. 414, 421, 942 A.2d 440 (2008).

A

With respect to Gaetano's testimony, the defendant seems to argue that the court should not have admitted the testimony because (1) Gaetano was not disclosed as a witness prior to trial and (2) assuming that Gaetano was testifying on behalf of Walsh, who was disclosed as a witness on October 5, 2006, that disclosure did not comply with the standing trial management orders that required the parties to disclose witnesses one week prior to the trial on October 10, 2006.[4] We emphasize that we will overturn the trial court's rulings on evidentiary matters only on a showing of clear abuse of discretion. Here, because the defendant was tardy on the first day of trial and because she continually claimed that she had not received the documents and exhibits from

---

[4] The New Haven judicial district family standing orders provide in relevant part: "One week prior to the assigned trial date, counsel and pro se parties . . . are ordered to submit to the trial judge . . . [a] list setting forth the names and addresses of each witness to be called at trial . . . ."

Walsh, Gaetano's testimony in her capacity as Walsh's administrative assistant was necessary for the purpose of determining whether and how the defendant received notice of the trial date and whether she had received from her prior counsel the documents necessary for trial. Therefore, the court properly admitted the testimony for that limited purpose. Accordingly, we are not persuaded by the defendant's contention that Gaetano's testimony resulted in unfair surprise or prejudice. See *Arnone* v. *Enfield*, 79 Conn. App. 501, 529, 831 A.2d 260 ("because [the witness], a very knowledgeable witness on the issue of standardized reporting procedures, testified in the capacity of a fact witness, the court's admission of his testimony, despite the plaintiff's failure to disclose him . . . was not improper"), cert. denied, 266 Conn. 932, 837 A.2d 804 (2003).

## B

With respect to the summary prepared by Williams, the defendant argues that (1) she had not received from Walsh and from the plaintiff all of the financial records that were admitted into evidence, (2) even if she had the documents, she could not have prepared for trial because she did not know which of those financial records would be relied on by the plaintiff, and (3) she had never seen the summary prepared by Williams and therefore could not rebut Williams' testimony or create a valid defense. We are not persuaded by the defendant's arguments.

After reviewing the record, we conclude that the court did not abuse its discretion in crediting Gaetano's testimony that the defendant had received all the underlying documents. It is within the trial court's exclusive province to weigh the evidence presented and to determine the credibility of witnesses. See *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 69, 940 A.2d 878 (2008). Furthermore, the plaintiff had provided

the list of exhibits that he intended to introduce at trial. On June 16, 2006, the plaintiff provided a list of twenty exhibits, and on October 5, 2006, he provided a list of twenty-one exhibits to be offered at trial. Both lists included Williams' summary, which was attached to the plaintiff's March 1, 2006 disclosure of expert witnesses and then updated in the May 8, 2006 amended disclosure of expert witnesses. More importantly, we further conclude that the admission of Williams' summary into evidence comports with § 10-5 of the rules of evidence, which permits the contents of admissible, voluminous documents to be admitted in the form of a summary, provided that the originals or copies are available to the other party for examination or copying at a reasonable time and place. The court gave the defendant two hours to review Williams' summary and to compare that summary to the underlying financial records. Accordingly, we conclude that the admission of Williams' summary did not constitute an abuse of discretion.[5]

---

[5] The defendant also claims that she was disadvantaged with respect to the ability to cross-examine the witnesses and to rebut the evidence because she elected to conduct the trial as a pro se litigant. We note that "[w]here a party appears pro se, as he has every right to do, his rights and claim should receive the same consideration as if he had been represented by an attorney. . . . Although we are lenient to parties who represent themselves, such leniency should not be invoked as to affect adversely the other parties' rights [and] we will not wholly disregard our rules of practice, adherence to which is necessary in order that the parties may know their rights and in order that the real issues in controversy may be presented and determined." (Citations omitted; internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 12, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989). Indeed, "[w]hile a judge trying a case in which one party is acting pro se must be careful, as always, to preserve the fairness of the trial, the adversary system is not suspended, and the judge cannot become the adviser or tactician for the pro se party." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 85, 924 A.2d 886 (2007). In the present case, although the trial transcripts reveal the defendant's frustrations with the rules of practice and courtroom decorum, they also indicate that the court conducted the trial in a fair manner in order to protect the rights of both parties.

## II

The defendant next claims that the court improperly distributed the parties' assets. She argues that the court should not have relied solely on the appraisals provided by the plaintiff to determine the value of the marital home in East Haven and the plaintiff's home in Texas. Because these properties were not valued properly, the defendant argues that the remaining assets were not equitably distributed under § 46b-81 (c).[6] We disagree.

The following facts and procedural history are relevant to our resolution of the defendant's claim. On May 4 and 5, 2006, the plaintiff appended to his disclosure of expert witnesses the appraisals of the marital home in East Haven and the plaintiff's home in Texas, respectively. At trial on October 10, 2006, when the plaintiff offered the appraisals as evidence, the defendant did not object. Furthermore, she did not provide the court with alternative appraisals for the properties in question.

"The distribution of assets in a dissolution action is governed by . . . § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the

---

[6] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme." (Internal quotation marks omitted.) *Ranfone* v. *Ranfone*, 103 Conn. App. 243, 246, 928 A.2d 575, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007).

As has been repeatedly stated by our Supreme Court, "judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Citations omitted; internal quotation marks omitted.) *Holley* v. *Holley*, 194 Conn. 25, 29, 478 A.2d 1000 (1984).

The memorandum of decision indicates that the court properly considered the criteria required by § 46b-81. In its memorandum of decision, the court determined that "[t]he assets listed on [the defendant's] financial affidavits are incomplete and misleading. . . . The marital assets listed by [the plaintiff] appear complete and credible." Before setting forth the division of assets, the court stated that it "has considered all the criteria of General Statutes §§ 46b-62, 46b-81 and 46b-82 and

other pertinent statutes, retirement income and earning capacity, causes for the breakdown of the marriage and consequences of the financial orders set forth . . . . These considerations are all in light of the evidence presented at trial." The defendant has cited nothing in the record that demonstrates that the court abused its discretion in distributing the parties' assets.[7] After reviewing the court's memorandum of decision in which it took into consideration all of the statutory criteria, we conclude that the court's distribution was not an abuse of discretion.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We also note that the defendant has failed to show that she had been prejudiced by the court's evidentiary rulings or harmed by the use of the appraisals. See *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 58, 929 A.2d 729 (evidentiary rulings overturned on appeal only when there was abuse of discretion and showing by defendant of substantial prejudice or injustice), cert. denied, 284 Conn. 931, 934 A.2d 246 (2007); see also *Holley* v. *Holley*, supra, 194 Conn. 29 ("[w]ith respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence" [internal quotation marks omitted]).

[8] Although it is not clear from her brief, the defendant appears to argue, in part, that the court improperly admitted the appraisals into evidence. We simply note that the defendant failed to raise an objection to the introduction into evidence of the appraisals. It is well established that "[i]n order to preserve an evidentiary ruling for review, trial counsel must object properly." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 501, 827 A.2d 729 (2003). "Generally, claims neither addressed nor decided by the trial court are not properly before an appellate tribunal." *MBNA America Bank, N.A.* v. *Bailey*, 104 Conn. App. 457, 468, 934 A.2d 316 (2007). Thus, to the extent that the defendant argues that the appraisals improperly were admitted into evidence, we decline to review this argument.